B. F. AVERY & SONS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

B. F. AVERY & SONS PLOW COMPANY (SUBSIDIARY OF B. F. AVERY & SONS, INC.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45636, 45638. Promulgated October 28, 1932.

*Donald V. Hunter, Esq.*, for the petitioners.
*J. A. Lyons, Esq.*, for the respondent.

1394

1396

OPINION.

MURDOCK: The petitioner argues, and we agree, that the adjustment on the notes was not made in settlement of damages for breach of contract. Thus, *Farmers & Merchants Bank of Catlettsburg* v.

*Commissioner*, 59 Fed. (2d) 912, does not apply. Neither was it a gift. Cf. *Rice, Barton & Fales* v. *Commissioner*, 41 Fed. (2d) 339. Counsel for the petitioner has ably and forcefully set forth the arguments and authorities in support of the petitioner's contentions. Yet, no case is cited which is directly in point. Many cases are cited where cancellation of debts was held not to result in income to the debtor. But it is a significant fact that in each the debtor was insolvent. The petitioner was solvent. Cf. *Commissioner* v. *Simmons Gin Co.*, 43 Fed. (2d) 327. Furthermore, we can not say, as was said in *Bowers* v. *Kerbaugh Empire Co.*, 271 U. S. 170, that the result of the entire transaction was a loss. If it appeared that the $300,000 was compensation for loss, then of course the petitioner would not be entitled to the deduction of $51,723.29 which the Commissioner has allowed for 1927 on account of loss on machinery and equipment purchased from the International Harvester Company. A loss may be deducted only where not compensated for by insurance or otherwise. Under that view of the case the petitioner would have been compensated for the loss and not entitled to the deduction.

The petitioner did not segregate on its books the business of manufacturing, selling and servicing the Champion machines from its other business. Consequently, it must resort to various estimates to show the amount it was required to spend as a result of receiving defective equipment and machines from International Harvester Company. Extra expense in the pattern shop, consisting of labor and material, was estimated to have amounted to $80,000 or $90,000. A witness estimated that 80 per cent of the machines sold in the Argentine required servicing at $25 each and about 4,000 machines were sold. Another estimate was that the petitioner had lost $323,991 on the sale and servicing of the Champion line. This estimate was arrived at by multiplying the known number of each kind of machine by a cost price and a selling price. The difference, gross profit, was reduced by 25 per cent of sales price, representing administration and selling expense, and by extra servicing, arrived at by multiplying $15 by 80 per cent of the number of machines sold. However, more than one-third of the machines were manufactured by the petitioner. The cost of these was not shown. Instead, their cost was assumed to be the same as those purchased from the International Harvester Company. The evidence does not show that normal selling and administration expenses were 25 per cent of the sales price. Furthermore, the cost of servicing and the number serviced were estimated in an offhand fashion, without reference to any records. Thus, we can have no confidence in the estimate made, and can not find that the petitioner suffered an actual loss from its

Champion business. The most shown by the record is that profits were less than they would have been had the manufacturing equipment and finished goods obtained from the International Harvester Company been 'up to expectations.

We are satisfied that the petitioner was put to considerable expense on account of the defects in machines and equipment purchased, and we feel reasonably sure that the additional expense to which it was put exceeded the amount of the canceled notes. It has deducted in past years most, if not all, of these expenditures from income through cost of goods sold, ordinary and necessary expenses and other means. Deductions for depreciation and loss, the latter allowed for the year before us, have permitted the petitioner to offset the entire cost of the manufacturing machinery against income. These deductions were based upon the assumption that the company would actually pay the costs accrued as liabilities.

The cost of this machinery and the cost of goods manufactured for the petitioner by the International Harvester Company, as originally agreed upon, were accrued on the petitioner's books in an open account. At a time when this account showed a large amount owing from the petitioner to the International Harvester Company, the petitioner gave its notes for the balance due. This transaction had no significance from an income standpoint. Later, some of the notes, having a total face value of $300,000, were canceled by the International Harvester Company. The cancellation took place in the taxable year before us. If all of the petitioner's transactions with the International Harvester Company had taken place in one year, the adjustment necessitated by the note cancellation probably would have been accomplished by eliminating the basis for depreciation and loss on the manufacturing machinery and reducing inventory and cost of goods sold. Cf. *Des Moines Improvement Co.*, 7 B. T. A. 279. The effect of this would have been to increase net income for that year and perhaps for some later years. The total increase in net income would have amounted to $300,000.

But the various transactions did not take place in one year. Instead, they were spread out over ten years. Income or loss of the first nine years has been computed on an accrual basis on facts known in those years, as was proper. In the tenth year it was known for the first time that $300,000 theretofore accrued as cost liability and offset against income would not have to be paid. It is not proper or possible to go back over prior years and adjust income in the light of this new development. Cf. *Highland Milk Condensing Co.* v. *Phillips*, 34 Fed. (2d) 777; *Cleveland Woolen Mills*, 8 B. T. A. 49; *Helvetia Milk Condensing Co.*, 5 B. T. A. 271; *Burnet*

v. *Sanford & Brooks Co.*, 282 U. S. 359. Does the fact that the cancellation occurred in the tenth year after almost all of the cost had been offset against income, and after it was too late to change the tax situation for prior years, deprive the cancellation of income-tax significance?

In *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, the Court said:

Here there was no shrinkage of assets and the taxpayer made a clear gain. As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct. * * * The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here.

In the present case there was no shrinkage of assets. The whole transaction was of a business nature, entered into for profit. As a result of its dealings resulting in cancellation, not only was there an improvement in the balace sheet and a bookkeeping profit, but also $300,000 of assets, previously offset by the obligation of the notes now extinct, were made available to the petitioner. Why was this not an accession to income in plain popular terms, whether a forgiveness of indebtedness or a revision of the original contract? While in a sense it was a return of expenditures made in purchasing its machinery and producing and selling its merchandise, still these expenditures were made in conducting its business for the purpose of making profits. The use of fixed accounting periods requires that the amount by which expenses, once deducted because paid or accrued, are reduced by later adjustments must be taken into income in the year of the adjustment. Only in this way can the amount of the taxpayer's reported income be made to agree with its actual income. We, therefore, hold that the amount in question was income to the petitioner for the year 1927. Cf. *Burnet* v. *Sanford & Brooks Co., supra; Great Northern Ry. Co.* v. *Lynch*, 292 Fed. 903; *Chicago, Rock Island & Pacific Railway Co.*, 13 B. T. A. 988; affirmed on this point, 47 Fed. (2d) 990; certiorari denied, 284 U. S. 618; *Charleston & Western Carolina Ry. Co.*, 17 B. T. A. 569; affd., 50 Fed. (2d) 342; *Chicago & North Western Ry. Co.*, 22 B. T. A. 1407, 1436; *Atlantic Coast Line R. R. Co.*, 23 B. T. A. 888; *S. & L. Building Corp.*, 19 B. T. A. 788 (this point not passed on by Circuit Court of Appeals).

*Judgment will be entered for the respondent.*