MARBELITE CORPORATION OF AMERICA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50644.    Promulgated July 10, 1934.

*Frank Mergenthaler, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

OPINION.

MARQUETTE: The respondent has determined a deficiency in income tax for the year 1926 in the amount of $856.87. The only error alleged is that the respondent has included in the taxable income of the petitioner for the year 1926 the sum of $6,347.18, on the ground that this amount constituted undistributed profits of certain

trusts. This proceeding was submitted on the following stipulation of facts:

During the year 1925 petitioner purchased 55.4/1000ths of the beneficial interests in trusts Nos. S–6318 and S–6365, Title Insurance and Trust Company, Trustee. The cost of said interests to the petitioner was $27,700.00.

For the year 1926 the Commissioner found that the profits of the said trusts amounted to $114,570.25, of which sum he allocated $6,347.18 to the beneficial interests owned by the petitioner. The trusts have never made any distributions to the holders of the beneficial interests. The petitioner has never received any income or distribution of any nature from the said trusts.

Trust No. S–6318 was created by a declaration of trust executed by the Title Insurance and Trust Company, as Trustee, under date of January 30, 1924. A copy of the said Declaration of Trust, marked "Exhibit A", is attached hereto and made a part hereof.

Trust No. S–6365 was created by a declaration of trust executed by the Title Insurance and Trust Company, as Trustee, under date of February 4, 1924. This trust is of minor importance, and the declaration of trust is similar to the one creating Trust No. S–6318. If the two trusts had been treated separately only a small part, if any, of the net profit of $114,570.25 would apply to Trust S–6365.

The Trustee of Trusts S–6318 and S–6365 filed notices under Section 704 (b) of the Revenue Act of 1928 within the time required, electing to have income of both trusts taxed to the beneficiaries whether distributed or not.

The said trusts are typical California real estate subdivision trusts. The declarations of trust do not provide for the buying and selling of property, but their activities are limited to the subdivision and sale of the particular tracts of land described in the declaration of trust. The Trustee has no power to buy or exchange or acquire any other real estate. The trusts were created and operated for the sole purpose of liquidating real property as a single venture, distributing the proceeds therefrom in due course to or for the benefit of the beneficiaries, and discharging indebtedness secured by the trust property.

The Commissioner has included the said sum of $6,347.18 in the petitioner's income for said year. The petitioner treated the said $6,347.18 as a reduction of its cost, and since it had not recovered all of its cost did not include any part of this amount in its income.

The parties to the stipulation reserved the right to introduce further evidence and under this provision the respondent showed from the markings on the income tax return of the petitioner for 1926 that it was filed with the collector of internal revenue for the sixth district of California. The following are the pertinent provisions of the declaration of trust filed with the stipulation as Exhibit A. The Title Insurance & Trust Co. acknowledged that it had received a deed dated December 15, 1923, from Alma C. Tadlock, a widow, which conveyed to it certain real estate in Los Angeles County, California. The real estate was held by it subject to the second installment of county taxes for the fiscal year 1923–1924, and also subject to a deed of trust which secured five notes for $153,977 each, due January 1, 1926, 1927, 1928, 1929, and 1930,

respectively, with interest payable quarterly at 6 percent. The deed recited that the beneficiary, O. Nicholas Gabriel, promised for himself, and his heirs and assigns, to pay all taxes and assessments against the property, and all other claims, liens, and encumbrances; to provide fire insurance, payable to the trustee as its interest might appear; to defend all actions affecting the property and to repay within 30 days from the date of the advancements, with interest, all sums advanced or expended by the trustee. The trustee was given the right, upon the failure of the beneficiaries to pay such sums, to make said payments and reimburse itself out of the property. Provision was made for a resubdivision of the property, such resubdivision to be made by the beneficiary in such manner as might be agreed upon between him and the trustee. The beneficiary agreed to improve the resubdivision or such part as he might select in such manner as he and the trustee might agree upon, but in any event to include the installation of water, gas, electricity, sidewalks, curbs, and macadam paving of all streets. The trustee agreed to sell the lots in the resubdivision upon such terms and for such prices as it should deem advisable, but in no event to execute any deed or agreement of sale of any lot except for a sale price not less than those indicated in the schedule of prices attached to the deed. Section 2 of the deed provided:

To DISTRIBUTE the proceeds (Principal and interest), received by said Trustee, arising from EACH SALE hereinbefore mentioned of property covered hereby as follows:

1st: To the payment of the costs, fees, expenses, damages, and advances (if any) with interest, hereunder of said Trustee.

2nd: To the payment, to the agent or agents hereunder (hereinafter mentioned) entitled thereto, of a commission for said sale of twenty-two and one-half per cent (22½%) of the gross selling price of the land so sold.

3rd: At the sole discretion of said Trustee; to the accumulation for, and payment hereunder of, the following:

(1) Taxes and assessments levied and assessed against the property covered hereby:

(2) And interest maturing from time to time on the trust deed indebtedness hereinbefore described:

said Trustee, however, in no event to be required to make any such accumulation and/or payment in event said Trustee deems the same would infringe upon moneys arising, from said sale required for either or any of the following distributions "4th", "5th", and "7th".

4th: Until such time as the trust deed indebtedness hereinbefore described shall have been fully paid; twenty-five per cent (25%) of the portion of each sum of principal (but not of interest) received by said Trustee from said sale and not required for foregoing distributions "1st", "2nd", and "3rd" shall be accumulated hereunder toward the release price shown on the hereinbefore mentioned "EXHIBIT B" of each lot covered by said sale; and such accumulations shall be applied, in partial payments hereinbefore provided, on the principal of the aforesaid trust deed indebtedness.

5th: That portion of the principal (but not of the interest) received by said Trustee from said sale and not required for foregoing distributions "1st" to "4th", both inclusive, but in no event exceeding an amount equal to fifteen per cent (15%) of the actual gross sale price of the land hereunder covered by said sale, shall be placed by said Trustee into the Improvement Fund hereinafter mentioned; said Trustee, however, in no event to be required to make any such payment into said Fund, if, in the sole judgment of said Trustee, such payment would encroach on moneys required for the release price shown on said "Exhibit B" of each lot covered by said sale.

6th: The surplus—both principal and interest—of the proceeds received by said Trustee from said sale in excess of the following:

(1) The "remainder"—mentioned in the following distribution "7th"— of the release price of each lot covered by said sale,

(2) Plus an amount equal to five per cent (5%) of the actual gross sale price hereunder of each lot covered by said sale, shall be paid to the Beneficiary under this Trust.

7th: Until such time as the trust deed indebtedness hereinbefore described shall have been fully paid; to the accumulation of the remainder—not covered by foregoing distribution "4th"—of the release price shown on said "Exhibit B" of each lot covered by said sale; and such accumulations shall be paid and applied, in the partial payments hereinbefore provided, on the principal of the aforesaid trust deed indebtedness.

8th: And the surplus (if any) of the proceeds from said sale shall be paid to the Beneficiary under the Trust.

\*          \*          \*          \*          \*          \*          \*

Section 10 of the deed provided:

It Is Distinctly Understood that the interest under this Trust of said Beneficiary, and of each assignee and of each successor in interest of said Beneficiary, hereunder is personal property and that no such Beneficiary has, or shall have, any right, title or interest in or to the property covered hereby, nor has any right or power to in any manner apply for or secure the dissolution or termination of this Trust or the partition or division of any of the trust property; the sole right and power of each Beneficiary hereunder being to enforce the performance of the terms of this Trust as expressly set forth in this Declaration.

The deed finally provided that the trust should not cease until all costs, expenses, and advances made by the trustee and all liabilities incurred or sustained by it should be fully paid.

Petitioner makes two contentions—first, that it could not be in receipt of taxable gain until it recouped its cost, and, second, since it received no distributions from the two trusts, there was no income taxable to it.

In support of the first contention the petitioner cites *Anton M. Meyer*, 3 B.T.A. 1329; *D. M. Stevenson*, 9 B.T.A. 552; *Benjamin L. Allen*, 19 B.T.A. 1005; affd., 49 Fed. (2d) 716. In each of the first two cases it appears that certain deferred payments on an installment sale had no readily realizable market value, and that the cash payments were not equal to cost. Nothing like this appears in this proceeding. In the *Allen* case the issue presented by the petitioner was not involved, and what was said as to the cost or March 1, 1913,

value was only to the effect that, in the absence of proof as to cost or such value, the Commissioner should be sustained.

It is obvious that to apply the rule asserted by the petitioner to a sale or disposition of every asset purchased for a valuable consideration would be destructive of the scheme found in all of the revenue acts requiring the return of income on the basis of annual accountings. *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359. To sustain such a contention would be to hold that the Congress performed a futile act in enacting section 212 (d) of the Revenue Act of 1926 with respect to installment and casual sales. Of course, there are exceptional cases in which the return of profit may be postponed until cost has been recovered. Such a case is one where repayment is " wholly contingent upon facts or circumstances not possible to foretell with anything like fair certainty." *Burnet* v. *Logan*, 283 U.S. 404. Here nothing exceptional appears. We are given no facts as to values or as to the merits of the scheme or what was done. We do not know when the sales were first made, what was received on such sales, or what was done with the money received. We do not know why no distribution was made in 1926, the year before us, of the profit of $114,570.25, which the respondent has determined that the trusts earned in that year. This determination is unchallenged, and we accept it as true. We are not concerned as to the subsequent years, especially in the absence of all relevant facts. Cf. *B. F. Avery & Sons, Inc.*, 26 B.T.A. 1393. We see nothing exceptional in the facts which would bring this proceeding within the rule laid down in the *Logan* case.

In support of the second contention the petitioner refers to *Eisner* v. *Macomber*, 252 U.S. 189. We do not think that case is in point. What was decided there was that a stock dividend did not constitute taxable income for the reason that by it nothing was severed from the capital of the corporation, and that the taxpayer's interest in the corporation, while taking a different form, remained the same. Here, it is sought to tax to the petitioner his distributable share of the income of the trusts. It is obvious that this net income is taxable to someone. If these organizations are trusts, the income is taxable to them under section 219 of the Revenue Act of 1926. If they are associations, it is taxable to them as corporations. Here, section 704 (b) of the Revenue Act of 1928 [1] intervenes and

---

[1] Sec. 704. (b) For the purpose of the Revenue Act of 1926 and prior Revenue Acts. a trust shall, at the option of the trustee exercised within one year after the enactment of this Act, be considered as a trust the income of which is taxable (whether distributed or not) to the beneficiaries, and not as an association, if such trust (1) had a single trustee, and (2) was created and operated for the sole purpose of liquidating real property as a single venture (with such powers of administration as are incidental thereto, including the acquisition, improvement, conservation, division, and sale of such property), distributing the proceeds therefrom in due course to or for the benefit of the beneficiaries and discharging indebtedness secured by the trust property, and (3) has not made a return for the taxable year as an association.

grants to the trustees of trusts like the ones here involved the option to have them considered as trusts, the income of which is (whether distributed or not) taxable to the beneficiaries. This option the trustee has voluntarily exercised. There is nothing arbitrary about this. Cf. *C. C. Albright*, 28 B.T.A. 82. In fact the taxation of undistributed income is not new. Provisions for taxing such income are to be found in section 219 of the Revenue Acts of 1918, 1921, 1924, and 1926, and in section 162 of the Revenue Acts of 1928, 1932, and 1934. See also sections 218 (e) of the Revenue Act of 1918 and 218 (d) of the Revenue Act of 1921, providing for the taxation of personal service corporations. To sustain the petitioner's contention would be, in effect, to hold that section 704 and the above provisions relative to taxation of income of trusts and personal service corporations were invalid.

This long, continuous, and consistent policy of the Government in taxing such income is sufficient to raise a strong presumption that the provision assailed is valid, and this presumption is strengthened by the fact that these provisions have been enforced by the courts. In *Field* v. *Clark*, 143 U.S. 649, the Court, in sustaining the constitutionality of the third section of the Act of October 9, 1890, after referring to numerous acts of Congress and discussing the decision in *The Brig Aurora*, 7 Cranch, 382, 388, said:

If the decision in the case of *The Brig Aurora* had never been rendered, the practical construction of the Constitution, as given by so many acts of Congress, and embracing almost the entire period of our national existence, should not be overruled, unless upon a conviction that such legislation was clearly incompatible with the supreme law of the land. *Stuart* v. *Laird*, 1 Cranch, 299, 309; *Martin* v. *Hunter*, 1 Wheat. 304, 351; *Cooley*, v. *Port Wardens*, 12 How. 299, 315; *Lithographic Co.* v. *Sarony*, 111 U. S. 53, 57; *The Laura*, 114 U. S. 411, 416.

The presumption thus raised is resolved in favor of the validity of the statute. *Adkins* v. *Children's Hospital*, 261 U.S. 525.

*Judgment will be entered for the respondent.*