EDWARD MALLINCKRODT, JR., AND ST. LOUIS UNION TRUST COMPANY, A MISSOURI CORPORATION, TRUSTEES UNDER INDENTURE OF TRUST MADE APRIL 17, 1918, BY EDWARD MALLINCKRODT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JANE HOLDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79138, 87240, 87339. Promulgated October 21, 1938.

---

*Harry W. Kroeger, Esq.*, and *Daniel N. Kirby, Esq.*, for the petitioners.

*Frank M. Thompson, Jr., Esq.*, for the respondent.

962

OPINION.

Black: Although the respondent in his several deficiency notices has determined that, in connection with the transactions between the Mallinckrodt trust and the Jane Holding Corporation as set out in our findings, the trust received income in 1932 and 1933 in the amounts of $171,249.36 and $2,510,222.07, respectively, and that the Jane Holding Corporation also realized income in 1933 in the amount of $2,510,222.07, the respondent in his brief now contends primarily that the trust received income in 1933 in the amount determined; that,

as a first alternative contention, the Jane Holding Corporation realized income in 1933 in the amount determined; and that, as a second alternative contention, the trust received income in 1932 in the amount of $171,249.36 as interest, either actually or constructively received. We shall first discuss respondent's main contention and the one upon which he lays the most emphasis.

Did the Mallinckrodt trust, by virtue of the cancellation and forgiveness to the Jane Holding Corporation on December 30, 1933, of an open account in the amount of $2,890,349.83, receive in legal contemplation the accrued interest in the account in the amount of $2,-510,222.07, which accrued interest the corporation over a period of years had deducted from its gross income in determining its net income? The indebtedness was canceled in order that thereafter the corporation might distribute all its net income annually to the trustees, who in turn could distribute it to the beneficiaries of the trust. Under the terms of the trust indenture, the trustees were forbidden to distribute income to the beneficiaries as long as there was any outstanding indebtedness connected with the construction of the Arcade Building. In a statement attached to the deficiency notice in Docket No. 87339, the respondent said in part:

Your contention that no taxable income was realized by the Trust upon cancellation of indebtedness to Jane Holding Corporation in 1933 has been denied.

\* \* \* \* \* \* \*

It is contended that the effect of the cancellation of the indebtedness was simply to convert what had been a debt owing to the trustees from the corporation into an additional contribution by the trustees to the surplus account of the corporation and that it had become paid-in surplus and, further, that it was "a mere bookkeeping transaction in the nature of a capital readjustment."

It is held that the Trust received $2,510,222.07 in payment of the interest due to it from the Jane Holding Corporation in 1933 and that it represents taxable income in 1933. On December 31, 1933, in lieu of demanding or receiving cash in payment of the interest obligation the Trust elected to accept in payment something other than cash, that is, other property in the form of increased value of its stock in the Jane Holding Corporation. The effect is the same as though the corporation had paid the interest to the Trust in cash which was immediately returned to the corporation as paid-in surplus. The fact that instead of actual cash the payments were by-passed could not change the result as was stated by the Court in the case of Commissioner v. S. A. Woods Machine Company, 57 Fed. 2d. 635, certiorari denied 53 Supreme Court 15.

"The transaction involved in this case was equivalent to the payment of a debt in cash and the investment of the proceeds by the corporation in its own stock. If that had been done, clearly, the cash received would have been taxable income. The transaction was not changed in its essential character by the fact that, as the debtor happened also to own this stock, the money payment and the purchase of the stock were by-passed, and the stock was directly transferred in payment of the debt. The stock was the medium in which the debt was paid. The wide door to the evasion of taxes, opened by the decision of the Board, is an additional reason and quite a weighty one, against it."

Counsel for respondent continues to press in his brief the above views and cites, as one of the principal authorities in support of his contention, *Commissioner* v. *Woods Machine Co.*, 57 Fed. (2d) 635.

The petitioners, on the other hand, contend that the true nature of the transaction is to be defined by the word "relinquishment" and not by the words "payment" or "receipt"; that no artificialities or magic words such as "by-passing" can disguise the transaction as one of gain on the part of the trustees; that by canceling the debt, the trustees divested themselves of the right to enforce payment of $2,890,349.83 of their accumulated investment in the Jane Holding Corporation through the remedies of a creditor and allowed that investment to change from the category of debts to the category of net worth; that the constructive receipt doctrine is wholly inapplicable; that as a corollary from the doctrine of *Commissioner* v. *AutoStrop Safety Razor Co.*, 74 Fed. (2d) 226, the cancellation in question was simply a capital transaction giving rise to no income to the sole stockholder; that the transaction in question has none of the attributes requisite to the creation of income within the meaning of the Sixteenth Amendment; and that the case of *Commissioner* v. *Woods Machine Co.*, *supra*, cited and urged by the Commissioner as an authority in point is here inapplicable.

The Mallinckrodt trust and the Jane Holding Corporation are separate and distinct taxable entities under sections 161 and 13, respectively, of the Revenue Act of 1932, and we do not understand it to be the contention of any of the parties here involved that these entities should be treated otherwise. Cf. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. Of course, where the relationships between the taxable entities are as close as is the relationship here, namely, that of sole stockholder and corporation, the transactions between the two require close analysis in order that no injustice may be done either to the taxable entities or to the revenue provided for by Congress.

We have made this close analysis and we do not think that it can be held that the cancellation and forgiveness by the trust of its $2,890,349.83 indebtedness against the Jane Holding Corporation resulted in $2,510,222.07 taxable income to the trust by way of a collection of interest. It is undoubtedly true that, if the trust had received cash or other property in consideration for the cancellation of this indebtedness, the trust would have been taxable on the interest to the extent it was collected, either in cash or other property. No citation of authority is necessary to support that proposition. But the trust received no property in consideration of the cancellation of its indebtedness against the corporation. It is entirely too far fetched we think to treat the act of cancellation or relinquishment

the same as if the corporation had actually paid in cash the entire amount of its indebtedness to the trust and then the trust as a separate and independent transaction had paid in the amount thus collected as paid-in surplus to the corporation. That is the way the Commissioner wants to treat the transaction, but that is not what happened. If that had happened, then of course the trust would have been taxable on the $2,510,222.07 interest thus collected and thereafter, when it paid the $2,510,222.07 into the corporation as paid-in surplus, that amount, though recently collected as interest, would have become capital paid in and would have been immediately added to the trust's cost basis of its stock in the Jane Holding Corporation. But the trust in this particular transaction did not pay cash to the corporation. What it did was to cancel an account against the corporation which, although $2,890,349.83 in amount, had a cost basis to the trust of only $380,127.76 (the remaining amount of the unpaid principal of the account). One of the arguments which the Commissioner strongly urges in support of his view that we should hold the $2,510,222.07 as taxable income in 1933, is that if it is not taxed in that year, it will never be taxed. We do not agree with that view. It would be so, if the trust were entitled to add to its basis of cost of stock which it owned in the corporation, the full amount of the canceled debt, but it is not entitled so to do. All the cost which the trust had in the debt against the corporation was the $380,127.76 unpaid principal. The balance of the account represented interest which had never gone into the trust's income (aside from the $171,249.36 which we shall later discuss), and therefore represented unrealized appreciation of the account, and this unrealized appreciation petitioner trust can not add to its basis of cost of the stock of the corporation. Cf. *King* v. *United States*, 79 Fed. (2d) 453. In the latter case the Gramophone & Securities Corporation of Virginia was organized to take over certain stocks of inventor Emile Berliner and the sole consideration of the transfer of the securities from Berliner to the corporation was the stock of the newly organized corporation. He was the sole stockholder except as to two qualifying shares. This was clearly a nontaxable transfer under section 203 (b) (4) of the Revenue Act of 1926, and this was not disputed by either party in the case. Later, however, Berliner transferred 1,200 shares of Victor Talking Machine Co. stock to the corporation without receiving any stock for it, and the corporation set up the stock on its books as paid-in surplus to the extent of the fair market value of the stock at the time it was transferred to the corporation. Some months thereafter the corporation sold the Victor Talking Machine Co. stock for $1,302,000 and sought to use, as a basis for determining gain or loss on the sale, $1,200,000, which was the fair

market value of the stock when Berliner transferred it to the corporation. The court denied the use of the $1,200,000 basis and held that the correct basis for determining gain or loss upon the sale was $720,000, that being the March 1, 1913, value in the hands of Berliner, which was greater than his cost.

The grounds of the court's decision were that, because of section 203 (b) (4) of the Revenue Act of 1926, which has its counterpart in section 112 (b) (5) of the Revenue Act of 1932, no gain or loss was recognized to Berliner when he transferred the Victor Talking Machine Co. stock to the corporation, and, therefore, the cost basis to the corporation of the securities transferred was their cost to Berliner, and this was by reason of section 204 (a) (8) of the Revenue Act of 1926, which has its counterpart in section 113 (a) (8) of the Revenue Act of 1932.

A necessary corollary to the above holding of the court in *King* v. *United States, supra*, is that the cost basis to Berliner of the 19,998 shares of stock which he owned in the Gramophone & Securities Corporation was only increased by $720,000, the March 1, 1913, value of the Victor Talking Machine Co. stock, rather than by $1,200,000, its fair market value when it was transferred to the Gramophone & Securities Corporation as paid-in surplus. The reason for this is that the appreciation in value of the stock in Victor Talking Machine Co., which had taken place in Berliner's hands prior to the transfer to the corporation, was not recognized for tax purposes because of section 203 (b) (5), and therefore his basis of cost was not increased by the difference between $720,000 and $1,200,000.

For the same reason, in principle, the trust's cost basis of its stock holdings in the Jane Holding Corporation is not increased by the interest item of $2,510,222.07 (except as to the $171,249.36 interest for 1932, hereinafter discussed). The interest has not come in by the door of income. Therefore, it is not added to the trust's basis of cost of its stock in the Jane Holding Corporation. When and if the trust disposes of its stock in the Jane Holding Corporation, presumably it will realize, by means of an increase in the sale price of the stock or an increase in the amount received from liquidation, the increase in net worth which has resulted from the cancellation of the indebtedness. The mere appreciation in the value of its stock in the Jane Holding Corporation which undoubtedly resulted from its cancellation of the indebtedness in question is no more taxable as income to the trust than a depreciation in the value of the stock of the Jane Holding Corporation would result in a deductible loss. It is with realized gains and realized losses that the income statutes deal. The only cost basis that the trust will be entitled to use in arriving at gain or loss on the subsequent sale or liquidation of its stock in the

Jane Holding Corporation will be its original cost, plus $380,127.76 principal canceled, plus $171,249.36 interest for 1932, hereinafter discussed. In that manner, at some time in the future presumably, the trust will have taxable gain equal to the untaxed interest canceled, and therefore the interest will be eventually taxed, but in another form. Of course, it is perfectly true that the $2,510,222.07 assets in the Jane Holding Corporation which were released by the cancellation of the interest liability may be subsequently lost in the business and never be realized as income to the trust. As a matter of fact, its entire investment in the Jane Holding Corporation may some day become entirely worthless. But that is always a possibility to an investor when he leaves something at the risk of the business. But the mere fact that the canceled interest, in such a transaction as we have in the instant case, may ultimately be lost through a dissipation of the assets which the cancellation freed, would not be sufficient grounds to tax the canceled interest to the stockholder on a cash basis, who has never actually or constructively received it.

For reasons above stated, we reject the Commissioner's contention that, by its act of cancellation and relinquishment in 1933 of the $2,510,222.07 interest included in the $2,890,349.83 debt canceled, the trust realized in that year income to the extent of $2,510,222.07. On this issue, the Commissioner is reversed.

The next issue which we must decide is whether the $2,510,222.07 interest canceled and relinquished by the trust in 1933 was income to the Jane Holding Corporation. The Commissioner has so determined and that is the only issue we have to decide in Docket No. 87240.

We think that issue must be decided against the Commissioner on the authority of *AutoStrop Safety Razor Co.*, 28 B. T. A. 621; affd. (C. C. A., 2d Cir.), 74 Fed. (2d) 226.

It is our opinion that under the *AutoStrop Safety Razor Co.* decision the cancellation and forgiveness of the $2,510,222.07 of accrued interest liability must be held to amount to a contribution of capital to the corporation as well as the cancellation and forgiveness of the $380,127.76 of remaining principal, which respondent concedes was a capital contribution. The only difference between the two amounts, as we see it, is, as we have already endeavored to point out, that the trust is entitled to add to its basis of cost of its stock in the Jane Holding Corporation the $380,127.76 unpaid principal canceled, but is not entitled to add the $2,510,222.07 unpaid interest canceled. In the *AutoStrop Safety Razor Co.* case the Government had argued on appeal that the AutoStrop Safety Razor Co. was on an accrual basis and had deducted the amount of the debt, which con-

sisted of unpaid royalties and interest and loans, in previous returns; that the AutoStrop Co. was on the cash basis and had reported only the income actually received; and that therefore the deficiency was correctly determined. The Circuit Court of Appeals disposed of this contention by saying:

Should we assume that the claimed facts were before us, viz., that Auto Strop Safety Razor Company was on an accrual basis and deducted from its income the indebtedness as it was accrued on its books and that the Auto Strop Company was on a cash basis and so reported only what income it actually received, we do not think that would change the result. In doing what they did these two companies complied with the law. So far as now appears, their returns were correct and their taxes assessed and paid accordingly. When the indebtedness was cancelled, whether or not it was a contribution to the capital of the debtor depends upon considerations entirely foreign to the question of the payment of income taxes in some previous year. Since the cancellation, under the circumstances shown, did not make it income to Auto Strop Safety Razor Company in the year the debt was cancelled, it can not be taxed as its income in that year.

The effect of the cancellation of the debt in question by the corporation's sole stockholder seems to clearly fall within the last sentence of article 64 of Treasury Regulations 77, which reads as follows:

*Forgiveness of indebtedness.*—The cancellation and forgiveness of indebtedness may amount to a payment of income, to a gift, or to a capital transaction, dependent upon the circumstances. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income to that amount is realized by the debtor as compensation for his services. If however, a creditor merely desires to benefit a debtor and without any consideration therefor cancels the debt, the amount of the debt is a gift from the creditor to the debtor and need not be included in the latter's gross income. *If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation.* [Emphasis supplied.]

The trust, the sole stockholder of the corporation, as we have already endeavored to point out, gratuitously canceled and relinquished its indebtedness against the corporation. There was no property passing from the corporation to the trust in consideration of the cancellation and forgiveness of the indebtedness. That being true, the transaction resulted in a capital contribution to the corporation under the provisions of the foregoing regulation and the doctrine of the *Auto-Strop Safety Razor Co.* case.

The cases which respondent cites in support of his contention, such as *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393, and *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, are not in point. They did not deal with a contribution by a stockholder to the corporation, which, under the doctrine of *King* v. *United States, supra*, and *AutoStrop Safety Razor Co., supra*, is a capital transaction and is nontaxable. On this issue the Commissioner is reversed.

We shall next consider the question presented in Docket No. 79138, which the Commissioner designates in his brief as his second alternative contention. He freely conceded at the hearing and on brief that if the Board should hold that the $2,510,222.07 in question was income either to the trust or to the corporation in 1933, then the $171,249.36 which the corporation accrued on its books in 1932 as interest due the trust and credited to the account of the trust and deducted from its own income tax return in 1932, was not income to the trust in 1932. Since we have held against the Commissioner on his first two contentions we must now decide his third contention. The trust did not include the $171,249.36 in question as income in its income tax return for the year 1932.

The Commissioner in his determination of the deficiency against the trust added this $171,249.36 to the trust's income, and in explanation of his action stated in the deficiency notice, among other things, as follows:

* * * In the year 1932 the corporation made an entry on its books charging profit and loss and crediting the account of Edward Mallinckrodt Trust with $171,249.36, representing the accrued interest.

This office holds that $171,249.36 was constructively received, representing taxable income to the trust even though not actually received.

Article 322, Regulations 77, states in part:

"Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, * * *."

It appears that the trustees could have withdrawn the interest without jeopardizing the credit or financial standing of the corporation inasmuch as the corporation had tangible assets and investments which were not needed in the operation of its business. It appears that the corporation was under the absolute control of the trustees and payment of the interest was entirely within their control. In this connection the decision of the United States Board of Tax Appeals in the case of *John A. Brander*, 3 B. T. A. 231 and in the case of *Albert J. Sullivan*, 16 B. T. A. 1347 are referred to.

We think respondent must be sustained in his contention that the failure of the trust to collect the $171,249.36 interest due it from the corporation in the taxable year 1932 was a matter of its own free choice and not due to any inability on the part of the corporation to pay the interest. The corporation had large and valuable assets and abundant resources with which it could have paid the interest. It had receipts from interest and rents during the taxable year of $209,044.83 and operating expenses, including taxes, of only $17,112.57. It owed comparatively no debts outside of the indebt-

edness which it owed to the trust, its sole stockholder. During the period of 1920 to 1932, inclusive, the corporation had paid the trust $3,362,003.89 which the trust applied to principal and nothing to interest. We have none of these years before us except 1932, but we do have that year before us, and for the trust to contend that it did not collect its interest because the corporation was not financially able to pay it, is altogether unreasonable. A much more reasonable conclusion, when all the facts are considered, is that the trust did not collect the $171,249.36 interest in question because as the sole stockholder of the corporation it deliberately chose not to do so. Therefore in such a situation the doctrine of constructive receipt applies and we affirm the Commissioner in adding to the trust's income for the year 1932 the interest item of $171,249.36. Cf. *John A. Brander*, 3 B. T. A. 231; *Albert J. Sullivan*, 16 B. T. A. 1347; *Security First National Bank of Los Angeles et al., Executors*, 28 B. T. A. 289; *Jacobus v. United States*, 9 Fed. Supp. 41. It may be argued that we are inconsistent in applying the doctrine of constructive receipt to the annual interest due the trust in 1932, and not applying it to the full amount of $2,510,222.07 unpaid interest canceled in 1933, but we do not think so. We think the Commissioner, for the same reasons as we have applied to 1932, might well have applied the doctrine of constructive receipt for those prior years when the corporation accrued and deducted it from its gross income and credited to the account of the trust the amount of the current year's interest and the trust did not return it as income, although collecting more than the amount of the interest and applying it to principal. But we think we would not be justified in applying the doctrine of constructive receipt to the entire $2,510,222.07 in 1933. It is a very different thing we think to hold that the trust could have readily and easily collected the $171,249.36 interest due it for the year 1932 and that its failure to do so was by choice rather than necessity, than to hold that the trust could have readily collected from the corporation $2,510,-222.07 in 1933 and that its failure to do so was by choice rather than necessity. This latter fact we are unable to find from the evidence in the case. In this connection we may add in further continuance of the discussion under issue 1, that this $171,249.36 having now, by our decision in the instant case, been taken into the trust's taxable income, it will have a right to add it to the basis of its cost of its stock in the Jane Holding Corporation, along with the $380,127.76 unpaid principal which was canceled in 1933. The balance of the $2,510,222.07 interest canceled in 1933 would not, for reasons we have already stated, be added to the trust's cost of the stock of the Jane Holding Corporation because it has never gone into the trust's taxable income. If we had before us the question of the trust's

right to add this uncollected interest of prior years, aside from the $171,249.36 here in question, to its basis of cost of its stock in the Jane Holding Corporation, the trust would not, we think, be permitted to contend that although it did not actually receive the interest, it constructively received it and should have been taxed with it in prior years. Cf. *Raleigh* v. *United States*, 5 Fed. Supp. 622; *Moran* v. *Commissioner*, 67 Fed. (2d) 601.

While, as we have stated, we do not have before us the question of deciding how the basis of cost of the trust's stock in the Jane Holding Corporation was affected by the cancellation and relinquishment of the indebtedness in 1933, including interest of $2,510,222.07, and anything we have said herein on that subject is dicta, nevertheless it seems necessary to give some discussion to that phase of the matter in order to make all the more plain our reasons for holding that the cancellation by the trust in 1932 of $2,510,222.07 interest due it by the corporation was not taxable income in that year to the trust.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

SMITH, dissenting: I dissent from the Board's holding in this case that the Mallinckrodt trust, Docket No. 79138, is liable to income tax upon $171,249.36 interest credited to it upon the books of the Jane Holding Corporation for 1932. The trust and the corporation are separate taxable entities. The trust made its returns upon a cash receipts and disbursements basis in accordance with its books of account. It clearly was authorized by the law and the regulations of the Treasury Department to make its returns upon such basis. The taxpayer on a cash receipts and disbursements basis is not required to account for income unless it has been "received." Cf. *Avery* v. *Commissioner*, 292 U. S. 210. The only cash which it received from the Jane Holding Corporation in 1932 was $160,000 paid by the Jane Holding Corporation "on account." The trust accounted for the payment as being a receipt of a part of the loan made by the trust to the corporation. I think it might be held that the trust erroneously so treated the receipt of $160,000. In its income tax return for 1932 the Jane Holding Corporation had credited the trust with an accrual of $171,249.36 interest. It claimed the deduction from gross income of an accrual of interest in the amount of $187,243, thereby showing a net loss for the year of $130,193.36. I think it might properly be held that the payment made by the Jane Holding Corporation in 1932 to the trust of $160,000 was in reality a payment of interest and that the trust is taxable upon the receipt of that interest, even though on its books of account it shows the receipt as being a return of principal. But I can not see any justification for taxing the trust

on the receipt in 1932 of $171,249.36 interest received from the Jane Holding Corporation.

It is held in the majority opinion that the trust could have received the payment of $171,249.36 interest from the Jane Holding Corporation if it had desired to receive it. In my opinion there is no justification for such a statement. It is true that the Jane Holding Corporation had in its treasury at December 31, 1932, cash in the amount of $43,907.13. But there is no evidence of record that the trust could have received from the Jane Holding Corporation in 1932 a payment of interest in the amount of $171,249.36 if it had elected to receive it.

---

STERNHAGEN, dissenting: I find myself unable to accept the decision in Docket No. 87240, to the effect that the Jane Holding Corporation realized no income through the cancellation in 1933 by its creditor, the trustee, of the accumulated interest of $2,510,222.07. The decision is rested entirely upon *Commissioner* v. *AutoStrop Safety Razor Co.*, 74 Fed. (2d) 226, affirming 28 B. T. A. 621, and the last sentence of article 64 of Regulations 77. It is important to remember that the nature of so much of the canceled indebtedness as is now in issue was accumulated accrued interest and did not represent the principal of a loan of money which had been made by the trustee to the corporation. I think that this fact is of primary importance in considering whether it can properly be said that the trustee shareholder made a contribution to the corporation's capital, as he might have done when he made the original loan upon which the interest was computed. As I read the regulations and the *AutoStrop* case, they were intended to deal with such principal indebtedness and not with accrued interest. Certainly the three illustrations of the article of the regulations indicate that accrued interest was not in the draftsman's mind. When the Board and the court came to decide the *AutoStrop* case the dominant indebtedness which was thought of was that described in the instrument of cancellation as "royalties or commissions or on account of moneys loaned or advanced or otherwise." The word "interest", which appears but once in the findings and nowhere in the opinion, was entirely lost sight of. I think, therefore, that both the Board's opinion and the court's opinion should be regarded as dealing entirely with the question whether the principal of an indebtedness owing by a corporation to its shareholder becomes a contribution to capital when it is canceled. That case held that it does, and that the corporation thereby realizes no taxable income.

In the present case there is nothing to support a finding that the creditor, being the sole shareholder, intended a contribution of capital. On the contrary, the cancellation was made in order that

the trustee might distribute to one of its beneficiaries. The creditor corporation seems to me to have "made a clear gain" and "realized within the year an accession to income", to use the Supreme Court's language in *United States* v. *Kirby Lumber Co.*, 284 U. S. 1. Any thought of hardship which might result from this view is dispelled by the fact that the debtor corporation has for many years accrued interest on its books and deducted it on its returns, thus indicating that no contribution of capital was in contemplation. As I understand, there was a credit by the corporation to surplus and undivided profits, and thus the amount which had theretofore been definitely obligated to be paid as a debt was now freed of that obligation and was distributable or not to the shareholders entirely in the discretion of the directors. The trustee's position was changed from that of a creditor with a right against the corporation to that of a shareholder with no such right. As a debtor, the corporation had been firmly bound and the amount of the debt had been a true liability; with the forgiveness of the debt the liability ended, notwithstanding that the accounting item "surplus" may still appear on the liability side.

---

HILL, dissenting: I disagree with the opinion of the majority of the Board in Docket No. 87240.

It is my opinion that Jane Holding Corporation is taxable in the year 1933 on the amount of accrued interest canceled in that year by the Mallinckrodt trust, to the extent of deductions of such accrued interest taken by the corporation in its income tax returns for previous taxable years. The principal upon which the interest obligations were accrued by the corporation represented loans to it by its sole shareholder for use in its business operations.

The only justifiable theory upon which a taxpayer may deduct interest or ordinary and necessary business expenses accrued but not paid is that, for the purposes of taxation, such accrual is treated as payment. Of course, in order to subject the payee of such accruals to income tax on the amounts thereof, where the payee is on a cash basis, the amount of such accruals must be actually or constructively paid to him, notwithstanding the fact that as to the payor the accruing of such obligations, for the purposes of taxation, is tantamount to their payment. Where I refer hereinafter to accruals as payments it is to be understood that such expression is employed in the sense and in the connection above indicated.

In the present proceeding the accruals of interest were, to the extent of their deductions in the several taxable years, payments out of gross income and were not capital investments or paid out of capital. Taxable net income was reduced by the amounts of such deductions on the theory that so much of gross income as was neces-

sary to meet such accrued obligations for interest must be taken and set apart for that purpose. Therefore, to the extent of such deductions, the corporation did not receive taxable income in the years of such deductions. It received the amounts of such deductions as gross income but lost such amounts to taxable income through their appropriation to meet the accrual of interest obligations. The cancellation of the accrued interest obligations by the trust operated as a refundment in 1933 of such amounts lost to taxable income in the previous years and constituted income to the corporation in 1933. Such cancellation was a refundment of expenditures out of earnings and not out of capital of the corporation.

The fact that from the standpoint of the trust as sole shareholder of the Jane Holding Corporation such cancellation constituted a contribution to capital of the corporation does not alter the fact that from the standpoint of the corporation itself the cancellation constituted a restoration to it of taxable income to the extent of the amount of accruals which it deducted from its gross income in previous taxable years. The capital contribution by the trust was not of itself income to the corporation, but through such contribution by cancellation of interest obligations previously deducted by Jane Holding Corporation from its gross income an amount of income equal to the amount of such deductions was restored to the corporation's taxable income. Such restoration occurred in 1933 and constituted taxable income of the corporation in the year here involved.

I think my views herein are in harmony with the principle of the Board's decision in *South Dakota Concrete Products Co.*, 26 B. T. A. 1429, which has been frequently cited with approval by the Board. I think, also, that my views are supported by the principle upon which the Supreme Court based its opinion in *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. In that case the taxpayer, who was engaged in business for profit and in carrying out a dredging contract entered into with the United States, expended in the taxable years 1913, 1915, and 1916 as expenses more than was received in each of those years as compensation under its contract, and on its income tax return for those years reported net losses by reason of the deductions of such expenditures. As a result of a suit against the United States for the recovery of such excess expenditures the taxpayer recovered from the United States in 1920 the amount of such excesses but did not return the amount of such recovery in its income tax return for the year 1920. The Commissioner determined a deficiency against the taxpayer based upon the amount of such recovery. The taxpayer petitioned the Board for a redetermination, contending that such recovery did not constitute income but a return of capital

and hence the deficiency based thereon was erroneous. The Supreme Court in its opinion said:

> That the recovery made by respondent in 1920 was gross income for that year within the meaning of these sections cannot, we think, be doubted. The money received was derived from a contract entered into in the course of respondent's business operations for profit. While it equalled, and in a loose sense was a return of, expenditures made in performing the contract, still, as the Board of Tax Appeals found, the expenditures were made in defraying the expenses incurred in the prosecution of the work under the contract, for the purpose of earning profits. They *were not capital investments*, the cost of which, if converted, must first be restored from the proceeds before there is a capital gain taxable as income. See *Doyle* v. *Mitchell Brothers Co., supra*, page 185 of 247 U. S., 38 S. Ct. 467. [Emphasis added.]

I think, also, that my views are in harmony with the principle adopted and adhered to by the Board and the courts that, when a deduction for a bad debt is taken in a given taxable year and such debt is paid in a subsequent taxable year, the amount thereof becomes taxable income in the year received notwithstanding the fact that the amount received in payment of the debt is or may be a return of capital. In such case the taxpayer is not taxed on capital but upon restored net income lost in the taxable year when the deduction for the bad debt was, for tax purposes, allowed from gross income.

I am aware that in *Commissioner* v. *AutoStrop Safety Razor Co.*, 74 Fed. (2d) 226, on facts similar to those here, the Circuit Court of Appeals for the Second Circuit held:

> When the indebtedness was cancelled, whether or not it was a contribution to the capital of the debtor depends upon considerations entirely foreign to the question of the payment of income taxes in some previous year. Since the cancellation, under the circumstances shown, did not make it income to Auto Strop Safety Razor Company in the year the debt was cancelled, it cannot be taxed as its income in that year.

I find it difficult to distinguish the facts in the instant case from those in the *AutoStrop Safety Razor Co.* case, *supra*, but with due deference to the court rendering the opinion in that case, I am impelled to the belief that its opinion therein is out of harmony with the principle underlying the opinion of the Supreme Court in the *Sanford & Brooks Co.* case, *supra*.

For the reasons assigned it is my opinion that the Jane Holding Corporation is taxable in 1933 on an amount equal to the amount of the deductions taken by it from gross income in previous taxable years for accrued interest obligations canceled by the Mallinckrodt trust in 1933.

———

TURNER, dissenting: In my opinion the conclusion reached in Docket No. 87339 can not be reconciled with that reached in Docket No. 87240. In the case first mentioned it is concluded that the accrued

interest due and owing from the corporation to the trust, the payment of which was waived or canceled by the trust, did not constitute taxable income to the trust for the reason that the trust, being on the cash receipts basis, never received it actually or constructively; while at the same time it is concluded in the latter case that the interest so waived or canceled by the trust did not constitute income to the corporation because it was received by the corporation from the trust, its sole stockholder, as a payment or contribution to capital. I have been unable to think of any situation or arrangement whereby it might probably be said that the one entity can make a payment or contribution of any sum to another without first receiving, actually or constructively, the money so paid or contributed.

The situation here does not involve a normal and ordinary relationship between a stockholder and a corporation, and it is unlikely that the events which took place could have happened unless the interests of the sole stockholder and of the corporation were so nearly the same that it would make little if any difference, except for income tax purposes, whether the interest, so-called, was paid over to the stockholder or retained by the corporation. As I understand the facts, the Jane Holding Corporation was organized and maintained solely for the purpose of carrying on under corporate form certain enterprises of the trust, and particularly to erect a substantial office or business building, and the trust was to furnish such amounts as were needed for completion of the project. The income of the corporation was to be derived almost if not wholly from the rents to be obtained on the building. Assuming the separate entities of the trust and the corporation, the facts, as I understand them, are that as rents began to come in the Jane Holding Corporation from time to time made cash payments on the open account which it had set up to cover the loans or advances from the trust, which account covered not only the sums which had been advanced but interest thereon as it accrued from year to year. In making these payments there was no designation by the Jane Holding Corporation that these payments constituted a payment of interest or capital, and they were entered on the corporate books merely as payments on account. Normally under such circumstances there would be no occasion to designate the application of such payment to interest or principal, because it seems to me fundamental that where, in the absence of prior agreement or understanding, payments are made in respect of advances or loans, the amount so paid is to be regarded as the payment of interest to the extent of the interest then due and then as to any balance as a payment on principal. The only fact which could in any way indicate that such was not the case here is the fact that upon receiving these sums the trust, for some

reason which it has not seen fit to explain, made entries on its books designating the amounts received as payments of principal, leaving the interest to accumulate from year to year. In my opinion that fact alone should not be sufficient to justify either a conclusion of fact or a conclusion of law that the amounts dealt with in 1933 constituted interest and not principal. It seems to me therefore that the correct conclusion on the facts as I understand them would be that the interest accrued on the advances had been actually paid by the corporation over the period of years and actually received in cash by the trust to the extent of the cash payments, limited only to the amount of the interest which had accrued but remained unpaid at the time any particular payment was received. Under such circumstances, if that conclusion is correct, the only manner in which income tax may now be collected in respect of such interest payments would be through the adjustment of trust income for the years in which the prior payments were made, unless, by reason of the act of the trust in treating the payments as the return of principal and in failing to report in income as interest the payments made, some form of estoppel may be spelled out so as to justify the inclusion of a corresponding amount in income for 1933, when payment of the balance due on the account was waived.

According to my understanding of the report herein, however, all parties in interest, including the trust, the corporation, and the respondent, have either agreed, or have proceeded to the trial of the issues in the two cases on the assumption, that the amounts which were actually paid by the corporation to the trust during the preceding years were in truth and in fact the payments of principal and that in the year 1933 interest accrued on that principal actually remained unpaid in the amount of $2,510,222.07, and to that extent the payment waived by the trust was in fact interest. On the basis of such an understanding, assumption, or agreement of fact, I am of the view that the only reasonable and logical conclusion that may be reached is that the interest so accrued and unpaid was constructively received by the trust at the time payment was waived and by it paid into the corporation as a contribution to capital. In that view of the case the conclusion of the majority in Docket No. 87339 is in error and the conclusion reached in Docket No. 87240 is correct. There seems to be no question that if the amount waived had been admitted to be principal, cancellation of the indebtedness would have been accepted by all parties as a payment to capital.

While I do feel that the reasoning in *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, and *South Dakota Concrete Products Co.*, 26 B. T. A. 1429, referred to in the dissent of Mr. Hill, is persuasive, I am convinced that the situation in those cases, as in the case of the recovery of a bad debt, is quite different from that in the cases

before us. In each of the cases mentioned and in the case of a bad debt recovery, the recovery of funds was an actual realization on rights which existed in the person or corporation sought to be taxed, while here the acquisition of or the freeing of the sum of $2,510,222.07 from liability to the trust was not a realization on any right existing in the Jane Holding Corporation but the result of a voluntary act or gratuity of its sole stockholder, and, being a sum received or retained at the will of the stockholder, for which the corporation gave nothing, it constituted paid in capital. I am unable to see any analogy between a transaction such as we have in the cases before us and a transaction between a corporation and a stranger, as distinguished from a stockholder, such as took place in *United States* v. *Kirby Lumber Co.*, 284 U. S. 1.

For the reasons set forth, I respectfully express my dissent.

OPPER agrees with this dissent.