HERMAN E. LONDAGIN AND B. MAXINE LONDAGIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8237–71.    Filed October 30, 1973.

---

[7] See Bittker & Eustice, *Federal Income Taxation of Corporations and Shareholders* 9–26 (3d ed. 1971).

*Paul J. Nangle*, for the petitioners.
*Richard S. Shipley*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1968 in the amount of $1,679.09. The issue for decision is whether a payment in 1968 by the Alaska Mortgage Adjustment Agency to petitioners' mortgagee for the reduction of the mortgage on petitioners' home constitutes income in that year to petitioners to the extent that petitioners had received a tax benefit for an earthquake casualty loss deducted by them in a prior year.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. Herman E. and B. Maxine Londagin, husband and wife, who at the time of the filing of their petition in this case resided in Valdez, Alaska, filed a joint Federal income tax return for the year 1968 with the district director of internal revenue at Anchorage, Alaska.

On March 27, 1964, a severe earthquake occurred over a large part of Alaska. This earthquake, commonly referred to as the "Good Friday" earthquake, caused substantial damage to petitioners' personal residence in Valdez, Alaska. The damage was so extensive that petitioners were unable to continue to reside in their home. Petitioners on their joint Federal income tax return for the year 1964 claimed a casualty loss deduction from this earthquake damage in the amount of $10,050, computed as follows:

### EARTHQUAKE LOSSES

| | |
|---|---|
| Home appraised and purchased 6/1/63 | $14,900 |
| Appraised 5/15/65 [sic] by Urban Renewal | 4,750 |
| Total home loss | 10,150 |
| Less $100 limitation | 100 |
| Total loss | 10,050 |

On their joint 1964 income tax return petitioners had reported total adjusted gross income of $14,647.78. They claimed total deductions, including the claimed casualty loss, of $12,142.77, leaving a remainder

of income of $2,505.01. They claimed five personal exemptions of $600 each, totaling $3,000, and as a result showed no tax due for the year 1964. Respondent allowed the claimed casualty loss as shown by petitioners on their return.

On March 27, 1964, when the earthquake occurred, petitioners' home was encumbered with a first and second mortgage which together with accrued interest totaled $12,850.76. In August 1964 they obtained a loan from the Small Business Administration in the amount of $16,051.73, which was used to satisfy the then-existing mortgages on petitioners' home. The amount of the proceeds of the loan in excess of those mortgages was spent for repairs to the home to put it in condition to enable petitioners to move back into it to live. In 1966 the City of Valdez determined to move the entire town 4 miles further down the bay than the area where it was located at the time of the earthquake. In accordance with this determination the Alaska State Housing Authority condemned all existing property in Valdez. Under this condemnation the housing authority purchased petitioners' repaired house for $4,765 and then, in accordance with its policy in such cases, sold the salvage rights to the house back to petitioners for $800, and sold petitioners a lot in the new townsite for $660. In 1966 petitioners borrowed an additional $7,300 from the Small Business Administration which they spent to move their house to its new site and to do further rehabilitation work on the house.

On August 19, 1964, Congress amended the Alaska Omnibus Act by Pub. L. 88–451 (78 Stat. 505) to provide assistance to the State of Alaska for reconstruction of areas damaged by the earthquake. Section 57 of that law contained a provision authorizing grants for the purpose of enabling the State to adjust home mortgage obligations or other real property liens secured by one- to four-family homes which had been severely damaged or destroyed in the "Good Friday" earthquake. On September 7, 1964, a special session of the Alaskan legislature enacted legislation to implement section 57 of the Alaska Omnibus Act (ch. 1, SLA 1964, First Special Session). This law stated its purposes to be:

Sec. 2. Purpose. (a) It is determined and declared as a matter of legislative finding that

(1) A large number of one to four family homes that were severely damaged or destroyed in the March 1964 earthquake and subsequent seismic waves were owned subject to substantial mortgages and other liens;

(2) The damage to family homes in many cases exceeded 60 per cent of the pre-earthquake value of the homes;

(3) That no federal or state programs exist to relieve the economic hardship suffered by the homeowners although such programs do exist in many cases to assist other individuals and businesses;

(4) The President of the United States is authorized by Section 57 of the "1964 Amendments to the Alaska Omnibus Act" to make additional grants to the state in an amount up to $5,500,000 to match, on a fifty-fifty basis, any funds provided by the state to pay costs of retiring and adjusting such mortgage obligations;

(5) The absence of an effective program for relief of said mortgagors threatens to depress a substantial portion of the economy of the state and several municipalities within the state;

(6) The absence of an effective program for relief of said mortgagors will make it impossible for great numbers of individuals to rebuild their homes which will result in an exodus of solid citizens from the state and decrease the economy and the tax base of the state and certain municipalities at all levels;

(7) The absence of an adequate program for relief of mortgagors creates conditions contrary to the public interest which threaten, or may threaten, the health, safety, welfare, comfort, and security of the citizens of the state;

(8) An adequate program for relief of mortgagors will permit substantial rebuilding that would otherwise not be done and thus stabilize the economy of the state;

(9) An adequate plan for relief will stimulate the economy of the state by making available $5,500,000 of federal matching funds on a grant basis and is both necessary and desirable and in the best interests of the public welfare;

(10) As a result of the 1964 earthquake and subsequent seismic waves there is an aggravated housing shortage in several areas of the state that were affected by the earthquake and seismic waves and an adequate relief program will greatly contribute to the rebuilding of homes that were severely damaged or destroyed;

(11) There is a definite need for relief in the state for mortgagors who have lost their homes but still are burdened by substantial mortgages;

(12) A large number of mortgages, on one to four family homes which were severely damaged or destroyed in the March 1964 earthquake and subsequent seismic waves, are owned by banks and lending institutions outside the State of Alaska. These banks and lending institutions are a primary source of development capital for financing home mortgages, industrial development programs, and capital improvement programs within the State of Alaska. Bankruptcy and defaults resulting from the inability of individuals to pay their mortgage obligations may substantially and adversely affect the credit of the State of Alaska and its citizens and damage its reputation in financial circles throughout the United States for meeting its financial commitments. Injury to the state's credit and to its reputation for meeting financial obligations threaten to reduce sources of development capital which are essential to the economic growth and development of the State of Alaska.

(b) Therefore, it is the policy of the state to promote the health, safety, and welfare of its citizens by the creation of an agency to implement Section 57 of the "1964 Amendments to the Alaska Omnibus Act" by using federal grants and state matching money to relieve mortgagors whose homes were severely damaged or destroyed in the 1964 earthquake and subsequent seismic waves. The implementation of this program will stabilize the population of the state and stimulate and improve the economy and increase the tax base of the state and municipalities affected by the 1964 earthquake. These purposes are considered necessary and are public purposes for which public money may be spent.

In accordance with this Act the Governor of the State of Alaska prepared an Alaska Mortgage Adjustment Plan which was approved on behalf of the President of the United States on February 18, 1965.

This plan provided that the commissioner of commerce of the State of Alaska would administer a program through an agency to be known as the "Alaska Mortgage Adjustment Agency" which was established within the Department of Commerce of the State of Alaska. In accordance with the regulations issued by the Alaska Mortgage Adjustment Agency, petitioners made application to that agency for relief under the program. Petitioners' application was granted and the Alaska Mortgage Adjustment Agency in 1968 made a payment of $7,057.76 on the mortgage then outstanding on petitioners' home. This payment was sent by the Alaska Mortgage Adjustment Agency to the Small Business Administration which applied it in reduction of petitioners' home mortgage loan. At the time of the reduction of the mortgage, the term of the mortgage loan was reduced from 30 years to approximately 18 years. The payment made in reduction of petitioners' home mortgage loan by the Alaska Mortgage Adjustment Agency was made with respect to and because of the damage sustained by petitioners' residence during the 1964 "Good Friday" earthquake. The computation of the payment made on petitioners' mortgage was as follows:

1. Preearthquake fair market value_____ $15,000.00
2. Physical damage (cost of restoration)_____ 10,235.00
3. Computed post-earthquake value (line 1 minus line 2)_____ 4,765.00
4. March 27, 1964, aggregate outstanding amounts of purchase money and improvements lien obligations:
   First Fed. Savings and Loan_____ $9,657.20
   Less: 8% interest (3/28/64 to 4/1/64)_____ 6.44
   Philip E. Nickerman_____ 3,200.00
   
   Total_____ 12,850.76
   Less: Any discounts at which lienors acquired the obligations_____ 0
5. Aggregate outstanding obligations_____ 12,850.76

6. Adjusted outstanding obligations_____ 12,850.76
7. Amount by which March 27, 1964, obligations are eligible for reduction (line 6 minus line 3)_____ 8,085.76
8. Amount of principal required to be paid by or for lien debtor subsequent to March 27, 1964_____ 1,000.00
   (a) Amount paid to principal since March 27, 1964_____ 1,273.55
   (b) Excess (over $1,000) to be credited by lienor in further reduction of indebtedness (8(a) minus 8)_____ 273.55
9. Amount to be paid by Agency (line 7 minus line 8, but not to exceed $30,000)_____ 7,085.76

10. Amount by which each obligation is to be reduced by Agency payment in accordance with priorities under Alaska law:

| | |
|---|---|
| Small Business Administration | $7, 057. 76 |
| Title report | 28. 00 |
| Total | $7, 085. 76 |

After receiving the reduction in their mortgage by the payment made by the Mortgage Adjustment Agency, petitioners later in 1968 or 1969 obtained a personal loan of approximately $4,400 to further improve their home, and in 1973 borrowed an additional $3,500 from the First National Bank of Anchorage which they intend to use for additional improvements to their home. Petitioners have recently increased the fire insurance on their home to $30,000, but they do not believe they have yet fully restored their home to its preearthquake condition.

There was no discretion in the Alaska Mortgage Adjustment Agency with respect to payments on applications filed under the program. The payment was arrived at by a mechanical formula and was not affected in amount or method of computation by the hardship or need of assistance, or lack of such need, of the homeowners. Petitioners on their 1968 joint Federal income tax return made the following statement:

Taxpayer acknowledges receipt of Form 1099 from State of Alaska Mortgage Adjustment Agency payment in the amount of $7,057.76 was made to the Small Business Administration. In taxpayer's opinion such sum is not taxable income but rather a grant from the U.S. Government and the State of Alaska to bolster the mortgage money market in the State of Alaska.

Petitioners did not include any portion of the $7,057.76 in their taxable income for 1968. The respondent in his notice of deficiency increased petitioners' income as reported by $6,562.77 with the explanation that the amount of $7,057.76 paid to the Small Business Administration on petitioners' behalf by the Alaska Mortgage Adjustment Agency constituted gross income to petitioners to the extent that the payment exceeded the recovery exclusion provided by section 111 of the Internal Revenue Code.

### OPINION

Respondent in his brief takes the position that the $7,057.76 paid on petitioners' behalf by the Alaska Mortgage Adjustment Agency in reduction of petitioners' home mortgage was so connected with the loss petitioners sustained from the earthquake casualty as to constitute "compensation" for that casualty loss within the meaning of section 165(a) of the Internal Revenue Code of 1954.[1] Respondent further states that since the payment constituted compensation for a casualty loss which had been deducted by petitioners under the provision of

---

[1] All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

section 165(c), the amount is includable in petitioners' income under the provisions of section 1.165–1(d)(2)(iii), Income Tax Regs.[2] Respondent contends that there were no elements of a gift in the payments made in reduction of petitioners' home mortgage since the intent of the payment was to benefit the State of Alaska as a whole rather than to aid only those individuals who were in need of financial assistance. Respondent argues that the payment was not from a motive of "detached and disinterested generosity" and was not made "out of affection, respect, admiration, charity or like impulses" as required by the holding in *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960), for a payment to constitute a gift.

Petitioners in their brief do not argue that the payment made on their behalf by the Alaska Mortgage Adjustment Agency constituted a gift and, in effect, concede that it did not. Neither do petitioners question the respondent's computation of the amount includable in their income, if any amount is includable because of the payment made in reduction of their mortgage by the Alaska Mortgage Adjustment Agency. Petitioners' argument is that under the definition of income in *Eisner* v. *Macomber*, 252 U.S. 189, 207 (1920), as further defined in the cases of *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426 (1955); *Commissioner* v. *LoBue*, 351 U.S. 243 (1956); and *Gen. Investors Co.* v. *Commissioner*, 348 U.S. 434 (1955), they have received from the payment no "gain derived from capital, from labor or from both combined" in the year 1968. Petitioners in support of their conclusion that they received no gain because of the payment in 1968 point out that even though their mortgage was reduced the mortgage payments they made monthly were not reduced or substantially reduced since the term of the mortgage was reduced from 30 to 18 years.[3] Although not stated in those terms, petitioners are apparently contending that a cancellation of indebtedness on property does not result in income until the property is disposed of or at least until a final payment has been made on the mortgage.[4]

---

[2] Sec. 1.165–1(d)(2)(iii), Income Tax Regs., provides as follows:

(iii) If the taxpayer deducted a loss in accordance with the provisions of this paragraph and in a subsequent taxable year receives reimbursement for such loss, he does not recompute the tax for the taxable year in which the deduction was taken but includes the amount of such reimbursement in his gross income for the taxable year in which received, subject to the provisions of section 111, relating to recovery of amounts previously deducted.

[3] The record does not show whether it is a fact that petitioners' monthly mortgage payments were not reduced. However, since in our view if this is a fact it is immaterial to the determination made here, we will for the purpose of discussion accept petitioners' statement.

[4] Sec. 108, I.R.C. 1954, provides that a taxpayer who is discharged, in whole or in part, of indebtedness incurred or assumed in connection with property used in his trade or business may, at his election, not include the amount of the cancellation of indebtedness in gross income but use it as a reduction of the basis of the property. This section is obviously not applicable here since the property here involved is petitioners' home, not business property. Petitioners do not contend that this section is applicable, but in effect contend that a comparable exclusion should be available to them for the reduction in the indebtedness on their home.

Petitioners by this argument do not answer respondent's contention that the payment on their home mortgage is income to them since it compensated them in part for a casualty loss which they had previously claimed as a deduction. Amounts received as reimbursements, or refunds of amounts which were previously deducted from income with a resultant tax benefit, constitute income to a taxpayer in the year received even if the amount might not otherwise be an income item. See *Dobson* v. *Commissioner*, 320 U.S. 489 (1943). Furthermore, in our view petitioners have misconstrued the cases on which they rely. Those cases do not relate to whether income may be derived from the recovery of an item previously deducted nor do they deal as petitioners intimate with whether a cancellation of an indebtedness constitutes income. In this case respondent did not determine that petitioners had income from the cancellation of indebtedness, for if he had the amount of additional income determined would have been greater than the amount as determined in the deficiency notice.

Since respondent did not determine that petitioners received income from the cancellation of indebtedness, we need not decide this issue which petitioners indirectly raised. We do, however, point out that ordinarily where a solvent taxpayer receives a benefit of a reduction in an indebtedness which he owes and the reduction does not constitute a gift, that taxpayer has received taxable income. *United States* v. *Kirby Lumber Co.*, 284 U.S. 1 (1931). Other taxpayers have argued as do petitioners here that when the indebtedness which is wholly or partially discharged is secured by property which has not been disposed of no income has been received, relying on substantially the same reasoning as petitioners. In connection with a similar argument, we stated in *L. D. Coddon & Bros., Inc.*, 37 B.T.A. 393 (1938), that a cancellation of an indebtedness with respect to property which was still retained by the taxpayer was not merely an adjustment of the purchase price, and therefore a capital transaction, but under the decision of the Supreme Court in *United States* v. *Kirby Lumber Co.*, *supra*, constituted income to the taxpayer unless excludable for some other reason. In that case we stated (pp. 398–399) :

From an examination of these cases the present state of authority seems to be that where a solvent debtor is under direct obligation to make payments for physical property purchased by him or by his assignor, which is still held by him, and satisfies this obligation by paying less than the amounts called for by the obligation, the property continuing to be of a value sufficient to pay the indebtedness, the transaction will result in taxable income to the debtor in the amount by which the face value of the obligation exceeds the amount paid by him for its satisfaction. Whether income will be realized at the time of the partial forgiveness of the debt even if the property bought has a value less than the remaining obligation, we do not now decide, but it seems clear that realization should not be postponed until disposal of the property.

Here the record indicates that petitioners' property had value sufficient to pay the indebtedness on it at the time the payment was made on their behalf by the Alaska Mortgage Adjustment Agency. Shortly after the payment they borrowed additional sums to further improve the property and thereafter increased the insurance on their home to $30,000. At least there is nothing here to indicate that petitioners' property did not have a value in 1968 in excess of the mortgage on the home. In *Reliable Incubator & Brooder Co.*, 6 T.C. 919 (1946), we applied the same rule applied in *L. D. Coddon & Bros., Inc., supra*, to a partial reduction of an indebtedness of a taxpayer who continued to hold mortgaged property subject to the balance of the indebtedness. In our view, there is no distinction in petitioners' arguments here and the arguments we refused to follow in the *Coddon* and *Reliable Incubator* cases. The contention made by petitioners that they can receive no income from a transaction which is in some way related to property until the property is disposed of is not valid even in those cases which involved cancellation of indebtedness. Their contention certainly is not persuasive in this case which involves compensation in the year in issue for a casualty loss previously deducted.

We conclude that petitioners' position that they received no income from the payment in reduction of their home mortgage in the year the payment was made is not well taken.[5]

*Decision will be entered for the respondent.*

---

[5] Petitioners in their brief also rely on the case of *Conner* v. *United States*, 303 F. Supp. 1187, 1191 (S.D. Tex. 1969), affirmed on this issue 439 F. 2d 974 (C.A. 5, 1971). In our view that case, which held that insurance paid for temporary living expenses of a taxpayer whose home was partially destroyed by fire was not income to the taxpayer but should be considered as part of the insurance compensation in determining the amount of the casualty loss, has no application to the facts here present. However, it is also noted that we took the opposite view in *Neil F. McCabe*, 54 T.C. 1745 (1970), concluding that such a payment constituted income but pointing out that Congress had for years subsequent to 1969 amended the Code to specifically provide that such an item was not includable in income.