JOHN E. MONTGOMERY AND IRIS E. MONTGOMERY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3726-73.    Filed December 8, 1975.

John E. Montgomery, pro se.
*Roy S. Fischbeck,* for the respondent.

## OPINION

Section 165(a) permits a taxpayer to deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise." A loss is *sustained,* within the meaning of section 165(a), in the year identifiable events evidence a closed and completed transaction. Sec. 1.165-1(d)(1), Income Tax Regs.[2] Whether a casualty loss has been sustained in the year of the casualty often turns on the taxpayer's prospects of receiving

---

[2] Sec. 1.165-1(d), Income Tax Regs., provides in part:

(d) *Year of deduction.* (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. * * *

(2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release.

(ii) If in the year of the casualty or other event a portion of the loss is not covered by a claim for reimbursement with respect to which there is a reasonable prospect of recovery, then such portion of the loss is sustained during the taxable year in which the casualty or other event occurs. * * *

(iii) If the taxpayer deducted a loss in accordance with the provisions of this paragraph and in a subsequent taxable year receives reimbursement for such loss, he does not recompute the tax for the taxable year in which the deduction was taken but includes the amount of such reimbursement in his gross income for the taxable year in which received, subject to the provisions of section 111, relating to recovery of amounts previously deducted.

future reimbursement. If, during the tax year of the casualty, there exists a claim for reimbursement for which there is a reasonable prospect of recovery, no portion of the loss is sustained until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Sec. 1.165-1(d)(2)(i), Income Tax Regs.; see *Louis Gale,* 41 T.C. 269 (1963). On the other hand, if no reasonable expectation of recovery exists as of the last day of the tax year in which the casualty occurred, the taxpayer is deemed to have sustained the loss in the year of the casualty.

The controversy here relates to the year in which petitioner must report his insurance proceeds. Respondent contends the recovery is income in 1970 while petitioner urges the proceeds must be reflected in the computation of tax for 1969. Both parties claim that section 1.165-1(d)(2) of the regulations, or specific provisions thereof, support their respective positions. We have previously examined this regulation and found it in substantial accord with prior judicial decisions. *Louis Gale, supra.* Since petitioner has neither pleaded nor argued that the loss was sustained and allowable in a year other than 1969, we confine our decision to whether the law as interpreted in the regulations permits petitioner to report the insurance recovery by amending his 1969 return.

Respondent contends that petitioner properly deducted his loss in 1969 and must report the subsequent recovery as income in the year of receipt, 1970. In support of this contention respondent relies on the "tax benefit rule" which, with regard to casualty losses, is expressed in. section 1.165-1(d)(2)(iii), Income Tax Regs. That rule provides that if an amount deducted from gross income is recovered in a subsequent tax year, the recovery is income in the year of receipt to the extent the prior deduction resulted in a tax benefit.

Petitioner argues that his recovery of $16,000 in 1970 proves he had a reasonable prospect of recovering that amount in the year 1969. Because section 1.165-1(d)(2)(i) of the regulations prohibits the deduction of any portion of a loss for which there is a reasonable prospect of recovery, petitioner concludes that he was required to amend his original 1969 return and reduce his reported loss by $16,000. We disagree with this argument for the reasons set forth hereinbelow.

A recovery in a later tax year does not prove that a reasonable prospect of recovering that specific amount existed in the earlier year. We believe petitioner has interpreted the phrase "reasonable prospect of recovery" as synonymous with recovery in fact. The two cannot be used interchangeably. The existence of a reasonable prospect of recovery depends on the facts and circumstances as of the last day of the tax year in which the casualty occurred. That determination is a tool to help gauge whether the casualty is or is not "compensated for by insurance or otherwise." That in turn answers the question of whether the transaction is sufficiently closed and completed so as to require the immediate reporting of the loss. Events in a later tax year may well disprove the accuracy of the earlier determination. In that event, the facts arising in the later year are considered in the computation of income for that same year.

We find no authority in the regulations, or elsewhere, which would permit petitioner to file an amended return under the circumstances here presented. Petitioner's amendment goes beyond the correction of minor mathematical errors or miscalculations and attempts to rearrange facts and readjust income for 2 years. Such maneuvering is contrary to the fundamental principle that tax liability is based on facts as they exist at the end of each annual accounting period. See *Keeler v. Commissioner,* 180 F. 2d 707 (10th Cir. 1950), affg. 12 T.C. 713 (1949). As we said long ago in *Estate of William H. Block,* 39 B.T.A. 338, 341 (1939), affd. sub nom. *Union Trust Co. v. Commissioner,* 111 F. 2d 60 (7th Cir. 1940), cert. denied 311 U.S. 658 (1940):

Income tax liability must be determined for annual periods on the basis of facts as they existed in each period. When recovery or some other event which is inconsistent with what has been done in the past occurs, adjustment must be made in reporting income for the year in which the change occurs. No other system would be practical in view of the statute of limitations, the obvious administrative difficulties involved, and the lack of finality in income tax liability, which would result. * * *

Furthermore, petitioner's argument disregards the clear language of section 1.165-1(d)(2)(iii) of the regulations on which respondent relies. That provision restates the "tax benefit rule" which is applicable in like and similar circumstances where an amount deducted in 1 year is recovered in a later year. The amount recovered is income in the year of the recovery to the

extent the prior deduction resulted in a tax benefit. The application of the tax benefit rule is not limited, as petitioner suggests, to situations where the recovery occurs after the prior year is closed by the statute of limitations.

We hold that petitioner properly deducted his casualty loss in 1969 and that the insurance recovery constitutes income in 1970 to the extent the petitioner benefited from the deduction of that amount in 1969. See *Herman E. Londagin,* 61 T.C. 117 (1973).

As to the second issue, respondent has determined a deficiency based on the partial cancellation of the debt owed by petitioner and Homer to Julian and Cornelia Kolden. The Koldens agreed in 1970 to accept $3,500 less than the balance due on their notes.

Generally, when a solvent debtor has a fixed obligation reduced or canceled, the amount of the reduction or cancellation constitutes income for tax purposes. Sec. 61(a)(12); *United States v. Kirby Lumber Co.,* 284 U.S. 1 (1931). Unless the gain is excluded from income or its recognition postponed because of a statutory or judicial exception to this general rule, the amount of the debt cancellation is income in the year the debt is canceled. *Herman E. Londagin, supra; L. D. Coddon & Bros., Inc.,* 37 B.T.A. 393 (1938).

Petitioner contends that the debt reduction did not produce taxable income in 1970 for two reasons. First, petitioner urges that section 108 permits him to reduce the basis of his property by the amount of the debt canceled. Secondly, he claims that until the property underlying the debt is disposed of, there can be no realization of income upon which an income tax can be levied. We shall consider each of these separately.

Section 108 permits a taxpayer to defer the recognition of debt forgiveness income where an election to reduce basis is timely filed. Since petitioner did not file a consent pursuant to the statute with his 1970 return, nor did he attempt to file prior to trial, see sec. 1.108(a)(2), Income Tax Regs., petitioner is not entitled to the protection of this provision. Although a consent need not be "letter perfect" when filed, *Ambassador Hotel Co. of Los Angeles,* 23 T.C. 163 (1954), the benefits of section 108 are available only where the taxpayer timely elects such treatment. Cf. *Columbia Gas System, Inc. v. Commissioner,* 473 F. 2d 1244 (2d Cir. 1973); *Denman Tire & Rubber Co. v. Commissioner,* 192 F. 2d 261 (6th Cir. 1951), affg. 14 T.C. 706 (1950). Petitioner's argument that Agent Boon failed to inform him of

the requirements of section 108 during the audit of petitioner's original 1969 return is without merit. A revenue agent bears no duty to advise taxpayers.

Petitioner next argues that there can be no taxable gain until the property securing the debt is disposed of. Petitioner cites *Hirsch v. Commissioner,* 115 F. 2d 656 (7th Cir. 1940), revg. 41 B.T.A. 890 (1940), in support of this proposition.

The taxpayer in *Hirsch* purchased certain real estate in 1928 for $29,000. He paid $10,000 in cash and agreed to pay the balance in installments with the debt secured by a purchase-money mortgage. By 1936 the taxpayer had reduced the balance due to $15,000, however, during that interim, the property had depreciated in value to $8,000. The taxpayer sought to renegotiate the terms of the sale and the creditor agreed to accept $8,000 in full satisfaction of the debt. The Government contended that the debtor received a $7,000 gain from this accord but the Court of Appeals disagreed. The court held that the transaction was merely a reduction of the original purchase price. The court was unable to find any "income" since the depreciated value of the property was less than the face of the debt by at least the amount of the debt canceled. Thus the taxpayer in *Hirsch* was permitted to reduce his basis in the property and postpone the recognition of gain or loss until the property was ultimately disposed of.

The *Hirsch* case represents a judicial exception to the general rule that a debt cancellation constitutes income in the year of the cancellation. The "reduction of purchase price" exception is limited in scope and inapplicable to the facts at bar.

The exception does not apply where the secured property retained by the debtor has a value equal to or in excess of the obligation. *Commissioner v. Coastwise Transportation Co.,* 71 F. 2d 104 (1st Cir. 1934), revg. 22 B.T.A. 373 (1931), cert. denied 293 U.S. 595 (1934); see also *L. D. Coddon & Bros., Inc., supra.* Here the insurance proceeds received for the destroyed buildings exceeded the balance due on the obligation. Furthermore, these proceeds were payable directly to the Koldens, to the extent necessary to satisfy the debt, by virtue of the loss payable clauses in the insurance contracts.

This case is also distinguishable from *Hirsch* since petitioner has previously deducted the amount here in dispute.[3] Petitioner deducted his entire adjusted basis in the buildings as a casualty loss in 1969. This figure reflected the face amount of the Kolden obligation allocable to the buildings. Where an obligation previously deducted is later canceled in whole or in part, the reduction of purchase price exception is inapplicable. See *Herman E. Londagin, supra.* Cf. *B. F. Avery & Sons, Inc.,* 26 B.T.A. 1393 (1932).

We therefore hold the debt reduction constituted income to petitioner in 1970.

Finally, we must dispose of two additional matters raised by petitioner. Petitioner's argument that the respondent is barred from asserting a deficiency since the examining agent determined the amended 1969 return required "No Change" is without merit. The recommendation of an examining agent is not binding on respondent for purposes of litigation. See *Sampson v. Commissioner,* 444 F. 2d 530 (6th Cir. 1971), affg. a Memorandum Opinion of this Court; *Estate of Ella T. Meyer,* 58 T.C. 69 (1972).

Secondly, petitioner points out that he was denied certain administrative rights normally accorded taxpayers who dispute a determination of the respondent. Specifically, petitioner did not receive the so-called "30-day letter" or "preliminary notice" nor did he have a formal district or appellate conference prior to the issuance of the deficiency. Apparently petitioner seeks to void the notice of deficiency by claiming that the respondent has violated his own rules as contained in Statement of Procedural Rules, secs. 601.105 and 601.106. The Court was not advised as to why these procedures, particularly the hearings, were not held. We do know, however, that certain settlement conferences were held prior to trial. Nevertheless, the law is clear that denial of these administrative hearings does not affect the validity of the deficiency notice. Such procedural guides are directory and not mandatory. *Rosenberg v. Commissioner,* 450 F.2d 529 (10th Cir. 1971), affg. a Memorandum Opinion of this Court; *Luhring v. Glotzbach,* 304 F. 2d 560 (4th Cir. 1962).

[3] Respondent permitted petitioner to reduce his basis in the land by 20.8 percent of the debt canceled. That percentage figure corresponds to the percentage of the original purchase price attributable to the land. Thus, 79.2 percent of petitioner's one-half share of the debt cancellation is the amount of income respondent urges is taxable to petitioner in 1970.

Unfortunately for petitioner the result reached herein is a harsh one. While we sympathize with petitioner we cannot allow our sympathy to dictate a result contrary to the law. To reflect previous credits and adjustments,

*Decision will be entered under Rule 155.*