MERRITT M. and MAUD L. WILLIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Willis v. Commissioner
Docket No. 9568-76.
United States Tax Court
T.C. Memo 1980-304; 1980 Tax Ct. Memo LEXIS 278; 40 T.C.M. (CCH) 934; T.C.M. (RIA) 80304; August 11, 1980, Filed *278 Held, petitioners are not entitled to a loss deduction for 1973. The loss, if any, occurred in 1971. Held,further, petitioners are entitled to a theft loss deduction in an amount determined by the Court. Merritt M. Willis and Maud L. Willis, pro se. Cynthia J. Olson, for the respondent DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $1,165.88 in petitioners' income tax for the taxable year ended December 31, 1973. Due to petitioners' concession, the issues for decision are: (1) Whether petitioners are entitled to a loss deduction for 1973 in connection with the disposition of certain salvaged building materials; and (2) Whether petitioners are entitled to a theft loss deduction for 1973 in any amount greater than the $190 allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and, subject to an exception hereinafter noted, they are so found. The stipulated facts, together *280 with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Merritt M. Willis (hereinafter Merritt) and Maud L. Willis (hereinafter Maud) were husband and wife during the taxable year 1973. Petitioners were divorced in 1975. At the time the petition in the instant case was filed, Merritt resided in Carson City, Nev., and Maud resided in Reno, Nev.
Merritt and Maud lived separately during 1973 and originally each filed a separate return for the taxable year 1973. Subsequent to filing separate returns, petitioners filed an amended joint income tax return for 1973. In 1968 Merritt purchased two houses (but not the underlying land) from the State of Nevada at a nominal cost (approximately $30 each) with a view to demolishing them and salvaging the building materials. These houses were situated on the right-of-way of the soon-to-be-constructed Interstate 80 highway. Merritt acquired the houses for the purpose of using the building materials for the construction of rental properties. At that time petitioners owned other rental properties. The building materials consisted of bricks, lumber, toilets, bathtubs, and washbasins. Shortly after *281 he purchased the two houses, Merritt had the houses demolished and had the salvaged building materials transported to a residence in Reno, Nev. (hereinafter Reno residence), then shared by petitioners. Merritt intended to store the building materials at the Reno residence until he could use them. Subsequently in 1968 petitioners separated and Merritt moved to Carson City, Nev. Maud continued to live at the Reno residence at which the building materials were stored. After the separation Merritt moved approximately one-fourth of the building materials from the Reno residence. The remaining three-fourths stayed on the property. In April 1971 a document entitled "Notice to Owner of Hazardous and Unsanitary Conditions" and addressed to Merritt at the Reno residence was sent by the Washoe CountyNevada Building and Safety Department. This notice required the removal of the salvaged building materials from the Reno residence. Maud received the notice. Although he no longer lived at the Reno residence, Merritt saw the notice. [1]
*282 On April 30, 1971, Maud filed a motion in the Nevada State District County for authority to dispose of the salvaged building materials. At that time petitioners were apparently engaged in divorce proceedings. The motion was granted by the Washoe County District Court by order dated April 30, 1971. Both Maud and Merritt were represented by attorneys in this proceeding. Following the District Court's granting of her motion, during 1971 Maud disposed of all of the salvaged building materials located at the Reno residence. The lumber was sawed and used for firewood at the Reno residence. The remaining materials were either given away or transported to a local dump. Petitioners had a basis of $1,910 in the materials disposed of by Maud. In August 1973 Merritt's residence was burglarized. The items listed below, alongside of which are listed the values assigned thereto by Merritt, were stolen: Item
Value
4 suits
$40
1 overcoat
60
1 power saw
30
1 $10 gold piece
200
1 power drill
10
1 pocket watch
50
1 wristwatch
15
6 blankets
24
1 rug pad
10
1 Mexican nude painting
40
1 automatic 22 caliber pistol
40
1 butane torch and tank
5
1 Polaroid camera
25
2 butcher knives
5
1 Hoover vacuum cleaner
40
2 Carson City silver dollars
20
1 dollar bill (silver certificate)
1
$615
*283 On his originally filed separate return for 1973, Merritt deducted $955 as a long term capital loss as a result of the disposition of the salvaged building materials. This amount was calculated as being his one-half share of the approximate total cost of the community property disposed of by Maud. A similar deduction was not claimed by Maud on her separate return. On their amended joint return for 1973, petitioners deducted $1,910 ($955 X 2) as a long term capital loss. Also on his separate return for 1973, Merritt claimed a theft loss of $515 ($615 value less $100 limitation). This deduction was also claimed on the amended joint return. In the statutory notice of deficiency, respondent determined that no capital loss deduction was allowable since it had not been established that any deductible loss was sustained during the taxable year. It was also determined that a theft loss in excess of $190 ($290 less $100 limitation) had not been established. OPINION Prior to a discussion of the substantive issues involved herein, we first address a procedural matter. Despite petitioners having filed an amended joint income tax return prior to the issuance of the statutory notice *284 of deficiency, respondent in that notice (which was a joint notice) computed the deficiency in tax by using as a starting point the taxable income reported by Merritt on his separate return for 1973. [2] To this was added the income reported by Maud and the deductions claimed by her were subtracted.In addition the adjustments made to Merritt's reported income which are here in dispute were added back to arrive at joint taxable income. Although it would seem logical to compute the joint deficiency by reference to the amended joint return, we cannot say that respondent's method was improper. There is no legal requirement that respondent use the figures contained in the amended joint return in determining the amount of the deficiency. The notice of deficiency clearly informs petitioners of the deficiency amount and the adjustments made. While petitioners may *285 have justifiably been confused, there is no assertion that petitioners were in any way misled or misinformed. We have checked the notice of deficiency and have concluded that it accurately reflects the same joint taxable income as would be arrived at by starting with the joint return and making the same adjustments that were made in the notice of deficiency. While we do not recommend that respondent issue notices of deficiency computed in a manner that might be confusing to both the taxpayers and the Court, we conclude that petitioners received a valid notice of deficiency. The first substantive issue for decision is whether petitioners are entitled to a loss deduction for 1973 in connection with the disposition of salvaged building materials. We agree with respondent's determination that petitioners are not entitled to any such loss. In 1968 Merritt obtained at a cost of approximately $2,600 certain building materials which he stored at a residence he then shared with Maud. Merritt intended to use the materials to construct additional rental properties. At that time petitioners already owned a number of rental properties. Subsequent to the acquisition of the building materials, *286 Merritt and Maud separated and Merritt moved out of the residence at which the materials were located. Merritt later removed approximately one-fourth of the building materials to another place. The parties agree that petitioners had a basis of $1,910 in the materials which were not moved. In 1971, following receipt of both a notice from the county building and safety department to remove the building materials and an authorization from the county district court to remove the materials, Maud disposed of all of the salvaged building materials. Some of the materials were thrown away, some were given away, and some were retained by Maud for her personal use. No money was received for any of the disposed of materials. It is petitioners' claim that the foregoing disposition of the building materials gave rise to a deductible loss for 1973 because that was the year in which he discovered that the materials were missing. Even assuming that this disposition could give rise to a trade or business loss deduction under section 165, I.R.C. 1954, [3] it is clear that 1971 not 1973 would be the proper year in which to claim any loss. *287 A loss under section 165 is allowable only for the year in which the loss is sustained. "[A] loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occuring in such taxable year." Sec. 1.165-1(d)(1), Income Tax Regs. Disposition of all the building materials by Maud in 1971 was the identifiable event which fixed any "loss." Although Merritt seemingly recognizes that 1971 was the proper year in which to claim a deduction, he raises two points in support of the deduction in 1973. The first point is that he only became aware in 1973 of the 1971 disposition of the building materials. While the record is anything but clear as to whether Merritt knew in 1971 that the materials were disposed of, this fact is unimortant in determining when any loss would be deductible. Unlike a theft loss which is deductible in the year in which a taxpayer discovers the theft, sec. 165(e), a loss of the type at issue herein is deductible during the year when those events *288 which fix the loss occurred. Sec. 1.165-1(d)(1), Income Tax Regs.; Montgomery v. Commissioner,65 T.C. 511 (1975). On the facts of this case, the events fixing the loss occurred when the materials were disposed of in 1971. Merritt's second point in support of the deduction in 1973 is that he was originally told by an agent of respondent that rather than reopening a just-completed audit of his 1971 income tax return, it would be preferable to take the deduction in 1973. It was only after the statute of limitations precluded filing an amended return for 1971 that Merritt was told he could not take the deduction in 1973. Even if Merritt's testimony is true, it is of no help to petitioners case since respondent would not be bound by the misadvice of his agents. See Neri v. Commissioner,54 T.C. 767 (1970). Accordingly we conclude that petitioners are not entitled to any loss deduction in 1973 as a result of the 1971 disposition of the salvaged building materials.
The issue remaining for decision is whether petitioners are entitled to any theft loss deduction in excess of the $190 amount allowed by respondent, a question *289 on which petitioners have the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. There is no dispute that in 1973 Merritt's residence was burglarized and that the items set forth in the findings of fact were stolen. The dispute concerns establishing the fair market value of and Merritt's basis in those items as of the date of the theft, a deduction being allowed only for the lesser of fair market value or basis. Sec. 1.167-7(b)(1), Income Tax Regs.
Direct evidence was not introduced at trial by respondent concerning how it was determined that Merritt had a $290 theft loss and an allowable deduction of $190. Apparently, respondent obtained the $290 figure from the theft report filed by Merritt with the police immediately after the theft was discovered. Merritt testified that this report was inaccurate in that it did not include all the property stolen since it took him some time to accurately identify those items. While the principal evidence in support of the claimed theft loss was Merritt's testimony, we found that testimony to be candid and forthright on this issue. The values ascribed to the stolen items were reasonable. *290 Based on the evidence presented and using our best judgment, Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we conclude, after allowing for the section 165(c)(3) limitation of $100, that petitioners are entitled to a theft loss deduction in the amount of $347. The following is the basis for the allowed deduction: Item
Lesser of FMV or Basis
Suits
$40 (FMV)
Overcoat
60 (FMV)
Power saw
30 (FMV)
$10 gold piece
50 (Basis)
Power drill
10 (FMV)
Pocket watch
50 (FMV)
Wristwatch
15 (FMV)
Blankets
24 (FMV)
Rug pad
10 (FMV)
Painting
40 (FMV)
Pistol
40 (FMV)
Torch & tank
5 (FMV)
Camera
25 (FMV)
Knives
5 (FMV)
Vacuum
40 (FMV)
Silver dollars
2
Dollar bill
1 (FMV)
$447
Decision will be entered under Rule 155.
Footnotes
1. Contained in the stipulation of facts submitted into evidence was the stipulation that Merritt did not receive the notice referred to above because he no longer lived at the Reno residence. During trial, however, Merritt testified that he had received the notice. Accordingly, he have disregarded the stipulation. Jasionowski v. Commissioner,66 T.C. 312, 317-18↩ (1976).
2. The audit procedure which resulted in the issuance of the statutory notice apparently began as an audit of Merritt's separate return for 1973. Subsequent to initiation of this audit, petitioners decided to file an amended joint income tax return for 1973. This may explain why the deficiency was computed as it was.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue, unless otherwise noted. Sec. 165 provides in material part: (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013↩ for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of the filing the return, such loss has been claimed for estate tax purposes in the estate tax return.