T.C. Memo. 2002-221


UNITED STATES TAX COURT



MICHAEL J. ROBERTS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 9831-00L.          Filed September 4, 2002.

    P filed a petition for judicial review pursuant to
sec. 6330, I.R.C., in response to a determination by R
to proceed with collection by levy of assessed tax
liabilities for 1989, 1990, and 1991.

    <u>Held</u>:  Because P received a notice of deficiency
for 1989, 1990, and 1991 and failed to seek
redetermination in this Court, P's underlying tax
liabilities are not properly at issue in this
collection proceeding.

    <u>Held</u>, <u>further</u>, because the record does not
establish any abuse of discretion, R's determination to
proceed with collection action is sustained.


Michael J. Roberts, pro se.

<u>Karen Nicholson Sommers</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:  This case arises from a petition for judicial review filed in response to a "NOTICE OF DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330".  The issue for decision is whether respondent may proceed with collection action as so determined.  Unless otherwise indicated, section references are to sections of the Internal Revenue Code, as amended.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed in this case, petitioner resided in Rancho Santa Margarita, California.

Petitioner did not timely file Forms 1040, U.S. Individual Income Tax Return, for taxable year 1989, 1990, or 1991.  On May 19, 1994, respondent by certified mail sent a statutory notice of deficiency to petitioner for the 1989, 1990, and 1991 years.  The notice was addressed to petitioner at "109 23RD STREET, UNIT 1, NEWPORT BEACH, CA 92663-4309", and nothing in respondent's administrative files indicates that it was returned as undeliverable or unclaimed.  Respondent in the notice determined the deficiencies and additions to tax set forth below:

| Taxable | Income Tax | Additions to Tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1989 | $8,964.00 | $2,241.00 | $604.00 |
| 1990 | 7,867.00 | 1,966.75 | 516.00 |
| 1991 | 8,190.00 | 2,047.50 | 470.00 |

Respondent's determinations were based in large part upon Forms 1099 filed by various third-party payors, which forms respondent alleges indicated that petitioner operated a drywall installation business. Respondent also determined that petitioner received additional income for each year not reported on Forms 1099 through application of tables produced by the U.S. Department of Labor, Bureau of Labor Statistics. These adjustments were explained in the notice as follows:

> Based on statistical information from the U.S. Department of Labor, we have established amounts of personal living expenses and amounts of income needed to pay for those expenses. Since your income was not sufficient to pay for all of your personal living expenses, we have adjusted your income accordingly.

Petitioner thereafter on July 29, 1994, filed delinquent Forms 1040 for 1989 through 1991. These returns each reflected the same Newport Beach address to which the notice of deficiency had been sent and included a Schedule C, Profit or Loss From Business, for "Drywall Installation", "DRYWALL INSTALLER", or "DRYWALL CONTRACTOR". The Forms 1040 and Schedules C showed gross receipts, interest, and a State income tax refund in amounts identical to those shown in the Forms 1099 received by

respondent from third-party payors and used in calculating the determined deficiencies.  The Schedules C also contained deductions claimed by petitioner for various business expenditures, such as for car and truck expenses, travel, meals and entertainment, and small tools.

Petitioner did not file a petition with this Court for a redetermination of the tax liabilities asserted in the statutory notice.  The record in this case does, however, include a copy of a letter dated September 29, 1994, contained in respondent's administrative files and addressed to petitioner at the Newport Beach location.  This letter indicates that it was sent in response to petitioner's inquiry regarding the notice of deficiency dated May 19, 1994, and informs petitioner that the date for filing a petition with the Tax Court had expired. Respondent made assessments based on the amounts shown in the notice, plus statutory interest, on December 5, 1994, and issued to petitioner a notice of balance due on the same date (as well as on three subsequent occasions).

On May 26, 1999, respondent issued to petitioner a letter entitled "FINAL NOTICE--NOTICE OF INTENT TO LEVY AND NOTICE OF YOUR RIGHT TO A HEARING" with respect to the unpaid tax liabilities for 1989, 1990, and 1991.  Thereafter, on June 25, 1999, respondent received a Form 12153, Request for a Collection Due Process Hearing, submitted on behalf of petitioner.

Petitioner in the Form 12153 provided the following explanation of his disagreement with the notice of levy: "IRS USED 'GUESSES' FOR TAXPAYER'S TAX LIABILITIES FOR 12-31-89, 12-31-90, 12-31-91. IRS IS REQUIRED TO PROVE INCOME. REQUEST HEARING OR ABATEMENT OF TAXES, PENALTIES, INTEREST & CHARGES."[1]

After a period of correspondence between the parties, a letter dated July 12, 2000, from Appeals Officer Steve Millang to petitioner's representative extended an invitation for a face-to-face conference:

> If you wish to have an Appeals hearing at my office, you can meet with me on:
>
> > Monday - July 31, 2000 @ 9:30 a.m.
>
> If this time and date are inconvenient, please contact me to reschedule a mutually convenient Appeals conference.

Ultimately, however, it appears that the hearing was conducted solely through telephone contact and written correspondence. Copies of letters in the record reveal that petitioner asserted he did not receive sufficient income during the 1989 to 1991 period to necessitate the filing of returns or the paying of

---

[1] Petitioner in the Form 12153 also made a very similar statement registering disagreement with a "Filed Notice of Federal Tax Lien". However, a notice of Federal tax lien filing was not issued to petitioner because the relevant lien was filed in 1996, prior to enactment of sec. 6320 and the corresponding requirement for notice to taxpayers of such agency action.

Federal income taxes. Respondent then issued to petitioner on August 14, 2000, the aforementioned "NOTICE OF DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330". The notice states:

Applicable Law & Procedures -

With the best information available, the requirements of the various applicable law or administrative procedures have been met.

\*    \*    \*    \*    \*    \*    \*

Relevant Issues Presented by the Taxpayer -

1.   Your only argument is that assessments were made on guesses.  You state that the IRS has the burden of proof for income.

The underlying tax liability argument was not addressed at the Appeals level.  Since you had a previous chance to contest this issue at U.S. Tax Court and did not pursue that chance, the underlying tax liability will not be an issue that you can raise in this proceeding.  You raised no other issues relating to the unpaid taxes and made no proposals regarding collection alternatives.

Balancing Efficient Collection and Intrusiveness -

There appears to be no other viable method to pay the liability other than a levy.  You have not given us any other alternatives to settle your account.  Therefore, the determination is that the IRS may proceed with the proposed levy action.

Petitioner's petition disputing this notice was filed with the Tax Court on September 18, 2000.  Petitioner therein disputes respondent's determination on the following grounds:

a) The Commissioner has erroneously and wrongfully included taxable income for 1989, 1990, 1991 when the Petitioner did not have taxable income.  The Petitioner

did not meet the income requirements to file an income tax return and the Commissioner has assessed an incorrect tax, penalties and interest.

b) The Commissioner has erroneously and wrongfully ignored issuing a 30 day appeal to the Petitioner.  The Commissioner has erroneously and wrongfully ignored and failed to allow Petitioner rights to appeal.

c) Although the Commissioner has issued a Notice of Deficiency, the Notice was never received by the Petitioner.  The Commissioner has denied requests from Petitioner to obtain copies from the Commissioner of the Notice.

d) The Commissioner erroneously and wrongfully charged an income tax wherein no taxable income was received during the 1989, 1990, 1991 tax years.  The Commissioner has erroneously and wrongfully charged the Petitioner with the burden of proof and demanded the Petitioner prove Petitioner has no taxable income for the 1989, 1990, 1991 tax years.

OPINION

## I.  General Rules

Section 6331(a) authorizes the Commissioner to levy upon all property and rights to property of a taxpayer who fails to pay any tax liability within 10 days after notice and demand for payment.  Sections 6331(d) and 6330 then set forth procedures generally applicable to afford protections for taxpayers in such levy situations.  Section 6331(d) establishes the requirement that a person be provided with at least 30 days' prior written notice of the Commissioner's intent to levy before collection may proceed.  Section 6331(d) also indicates that this notification should include a statement of available administrative appeals. Section 6330(a) expands in several respects upon the premise of

section 6331(d), forbidding collection by levy until the taxpayer has received notice of the opportunity for administrative review of the matter in the form of an Appeals Office hearing.  Section 6330(b) grants a taxpayer who so requests the right to a fair hearing before an impartial Appeals officer.

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c).  In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;
>
> (ii) challenges to the appropriateness of collection actions; and
>
> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>
> (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person

did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows the taxpayer to seek judicial review in the Tax Court or a District Court.  In considering whether taxpayers are entitled to any relief from the Commissioner's determination, this Court has established the following standard of review:

where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis.  However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

## II.  Review of Underlying Tax Liabilities

With respect to the case at bar, the initial inquiry is whether petitioner received the notice of deficiency sent on May 19, 1994.  If petitioner did receive such notice, he was previously afforded an opportunity to challenge his underlying tax liabilities and failed to do so.  Consequently, his underlying tax liabilities would not properly be at issue in this proceeding.  See Sego v. Commissioner, supra at 609-610; Goza v. Commissioner, 114 T.C. 176, 180-183 (2000).

In his petition, petitioner contends that he never received the statutory notice.  His trial memorandum, however, contains the recitation set forth below:

In May of 1994 the Respondent sent a Notice to the Petitioner who tried to come up with extra monies to hire experts to help with the demands of the Respondent. By July 1994, two different experts assisted the Petitioner in preparing answers to the Respondent's demand. The information used by the experts in preparing the Petitioner's U.S. Individual Income Tax Returns for the three years in dispute, came from the IRS's own Income Tax Examination Changes. The experts advised the Petitioner of deductions that the Petitioner should claim and the experts assisted the Petitioner in estimating deductions which were reported on Schedule C for each of the years in dispute. The Petitioner hired tax preparers who advised to claim that the Petitioner did work ". . . just to get the IRS off his back." They scared teh [sic] Petitioner into filing these returns.

At trial, petitioner was questioned on several occasions regarding this issue. An early exchange went as follows:

MR. ROBERTS: What I'm challenging is they said that I had a business. I never had any business. And they based my income on my address, which I live in a very low-income place. Just because it happened to be in Newport Beach didn't--you know, which I don't think they ever checked out or anything. And these are the things I'm disputing.

So they gave me like forty some thousand dollars extra income, which--

THE COURT: Well, I know--I hear what you're saying. The trouble is when Congress passed this law in '98 to--to make it possible to come in and challenge the propriety of liens and levies, they put in that law you can't attack the underlying tax if you've already had a chance to do so and you didn't do it, and that's--that's where your case falls down here. You got a deficiency notice. You didn't respond to it.

MR. ROBERTS: I'm not sure--excuse me. I'm not sure if I ever got one because--I mean, not that I recall. I mean, this is back in '94, I believe.

Later a similar discussion ensued:

MR. ROBERTS: * * * What I've argued is, you know, these added monies that they've put in for like having a business, which I never had any business.

THE COURT: I know, but your time to do that was when you got the certified letter, and you should have filed a petition in the Tax Court to challenge it, but you didn't do that. That's the problem here, which I keep--I'm trying to explain to you.

MR. ROBERTS: Okay. I understand. But I'm not sure if I ever got this--what they're saying, and that's why I asked them if they had some, you know--me sign something or whatever, that type--'cause I honestly don't think I ever got one.

Finally, petitioner was asked directly to explain his allegations of nonreceipt:

THE COURT: Why do you say you never got the notice of deficiency?

MR. ROBERTS: I don't honestly remember ever getting it. And there was a--

THE COURT: You just don't remember getting it, or are you saying positively you didn't get it? Which is it?

MR. ROBERTS: I'm pretty sure or positively, I guess, that I didn't get it 'cause there was a fire at that--it's like a fourplex. So for--you know, I never lived there all the time and stuff, you know, 'cause I lived with other friends and stuff and that was kind of like a mailing address, kind of.

THE COURT: But that was your address, though--I mean, mailing address?

MR. ROBERTS: Yeah, one of 'em. But then I moved--you know, I lived in a lot of different places down on the beach area.

THE COURT: Well, you used that address when you filed those delinquent returns. Is there any particular reason why you did that?

MR. ROBERTS:  I couldn't give an answer to that. I mean, that's I don't know how may years ago.  I--you know,--

At the outset, we observe that the foregoing testimony is hardly an emphatic declaration on petitioner's part. Consequently, when other evidence betokening receipt is weighed against this equivocation, the former presents the more compelling picture.  The notice of deficiency was sent by certified mail to the address petitioner himself used on his delinquent Forms 1040 only 2 months later.  Nothing in respondent's files indicates return of the notice as undeliverable or unclaimed.  The fact that the late returns substantially mirror the content of the notice, as to both stated amounts and type of business activity, also marks an improbable coincidence in light of petitioner's averments that he never earned the income or operated the business so reflected.

There is additionally the September 29, 1994, letter in respondent's files that references an inquiry from petitioner regarding the May 19, 1994, notice.  We likewise are mindful of petitioner's seeming concession in his trial memorandum that mentions a May 1994 notice and the subsequent July returns intended "to get the IRS off his back."

Given this record, we are satisfied that petitioner received the notice of deficiency for the tax years 1989, 1990, and 1991 in time to file a petition with this Court and failed to do so.

See sec. 6213(a). He thus is barred from challenging the underlying tax liabilities in this collection proceeding. Accordingly, his contentions regarding lack of taxable income, as well as the burden of proof with respect thereto, are not properly at issue and will not be considered. We therefore review respondent's section 6330 determination solely for abuse of discretion.

## III. Review for Abuse of Discretion

In addressing whether the circumstances of this case reveal any abuse of discretion, we first deal with the allegation in the petition that respondent "wrongfully ignored issuing a 30 day appeal to the Petitioner." To the extent that this statement might refer to the preliminary 30-day letter and associated Appeals hearing that, as a matter of administrative practice, typically precede issuance of a notice of deficiency (or 90-day letter), any such argument has been repeatedly rejected. See, e.g., Smith v. United States, 478 F.2d 398, 400 (5th Cir. 1973); Rosenberg v. Commissioner, 450 F.2d 529, 531-533 (10th Cir. 1971), affg. T.C. Memo. 1970-201; Bromberg v. Ingling, 300 F.2d 859, 861 (9th Cir. 1962); Montgomery v. Commissioner, 65 T.C. 511, 522 (1975); Edwards v. Commissioner, T.C. Memo. 2002-169. As this Court recently summarized:

> The Internal Revenue Code and the regulations do not require the Commissioner to send a preliminary 30-day letter or to hold an administrative Appeals hearing before issuing a notice of deficiency. A 30-day letter

and an opportunity for an Appeals hearing is a matter of administrative practice and procedure and not a requirement of law. * * * [Edwards v. Commissioner, supra.]

In addition, to the extent that petitioner might be claiming that respondent declined to afford the requisite notice and opportunity for hearing under sections 6330 and 6331 before enforcing collection by levy, we initially note that our jurisdiction in this case does not depend on whether the Appeals Office offered or conducted an appropriate hearing. Lunsford v. Commissioner, 117 T.C. 159, 164-165 (2001). Furthermore, the record fails to show any impropriety in the collection procedures followed by respondent.

By letter dated May 26, 1999, petitioner was provided with a final notice of intent to levy and his right to a hearing. His Form 12153 was received by the Internal Revenue Service on June 25, 1999. After a period of correspondence between the parties, a letter dated July 12, 2000, was sent by Appeals Officer Millang inviting petitioner to participate in a hearing on July 31, 2000. Numerous letters were exchanged, and the eventual notice of determination concerning collection action addresses petitioner's arguments as reflected in such transmittals. We cannot find that petitioner was improperly denied any germane "30 day appeal".

Turning to the remaining issues specifically enumerated in section 6330(c)(2)(A) and reviewed under the abuse of discretion standard, petitioner has at no time raised a spousal defense,

identified any other valid challenge to the appropriateness of the intended collection action, or offered an alternative means of collection.  Since petitioner has failed to establish grounds for enjoining respondent from proceeding with collection by levy, we sustain respondent's determination.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.