T.C. Summary Opinion 2009-166


UNITED STATES TAX COURT


SEIFU HAILU RAGASSA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24782-07S.               Filed November 10, 2009.


Seifu Hailu Ragassa, pro se.

<u>Molly H. Donohue</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code (Code) in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $1,575 in petitioner's 2005 Federal income tax. The issues for decision are whether petitioner is entitled to business expense deductions, cost of goods sold, and itemized deductions greater than the amounts respondent allowed.

## Background

The parties submitted a stipulation of facts with accompanying exhibits, and we incorporate the stipulation and those exhibits by this reference. Petitioner resided in New Hampshire when he filed his petition.

Petitioner is originally from Ethiopia, where he worked as a journalist. Politically persecuted, he left in 1998 for Kenya, where he served as an interpreter in the U.S. Embassy in Nairobi. He emigrated to the United States near the end of 1999 or beginning of 2000, settling in New Hampshire.

During the year at issue, 2005, in addition to being a student, petitioner had three sources of income, which he correctly reported on his 2005 Federal income tax return. Petitioner's main source of income was $39,560 that he earned as a full-time employee of the State of New Hampshire Department of Corrections. Petitioner served the Department of Corrections as sergeant, supervising 14 correctional officers and more than 300

inmates who were assigned to a medium-custody facility while awaiting parole into the community.

Petitioner also earned $1,500 serving part time as a translator and interpreter for a New Hampshire language services corporation, Words Foreign Language Translation & Interpreting Services, Inc. (Words). Petitioner speaks many languages, including Aramaic, Ethiopian, Hindi, and Urdu. About every second or third week, on weekdays when he was not scheduled for work, petitioner would drive to a court in Maine or Massachusetts to perform interpreting services. The distance to the court in Maine, petitioner's principal destination, is 150 to 160 miles from petitioner's home. Petitioner would usually return home the same day, but on occasion, including sessions that lasted for 2 days, petitioner would stay overnight and drive home the following day. Petitioner received a flat rate from Words of $40 per hour.

Words did not pay for petitioner's travel time or reimburse petitioner for his vehicle or other expenses. Words issued a Form 1099-MISC, Miscellaneous Income, for 2005 reporting the $1,500 as nonemployee compensation. Petitioner therefore worked a total of 37.5 hours ($1,500 divided by $40 per hour) for Words during 2005. Petitioner reported his income and expenses from his interpreting activities on Schedule C, Profit or Loss From Business, a categorization that respondent does not challenge.

Petitioner's third source of income was gambling winnings. On Forms W-2G, Certain Gambling Winnings, Foxwoods Resort Casino reported that petitioner won $3,180 in gambling proceeds during 2005.

Petitioner timely filed his 2005 Federal income tax return, which respondent examined. Eddy of Ekanem Tax Services in Boston prepared the tax return and checked the box as a self-employed paid preparer. Because petitioner could not recall the preparer's last name, we will hereinafter refer to the preparer as Mr. Ekanem. In a notice of deficiency, respondent determined a deficiency in Federal income tax of $1,575 arising from the following five adjustments:

|  | Per 2005 Tax Return | Amount Allowed |
|---|---|---|
| **Schedule C** | | |
| Cost of goods sold | $2,004 | -0- |
| Car & truck expenses | 3,500 | $1,620 |
| Insurance | 2,100 | -0- |
| **Schedule A** | | |
| Charitable contributions | 3,175 | -0- |
| Gambling losses | 5,032 | 3,180 |

## Discussion

### I. Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule

142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a) the burden may shift to the Commissioner regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section. Petitioner does not argue that he satisfied the elements for a burden shift, but even if he did advance this argument, petitioner did not produce sufficient evidence to support a burden shift.  Accordingly, the burden of proof remains on petitioner to disprove respondent's determination for 2005.

## II.  Procedural Matters

Before delving into respondent's specific adjustments, petitioner asks the Court to consider two issues with respect to respondent's procedural conduct.

### A.  Preliminary Notices

With respect to the first procedural issue, petitioner claims that he did not receive any preliminary notices, such as the so-called 30-day letter or CP2000 notice, that the Internal Revenue Service (IRS) normally sends to taxpayers.  Therefore, petitioner contends that the IRS deprived him of an opportunity to discuss the adjustments before the IRS determined his deficiency.  Petitioner does not dispute, and would have no first-hand knowledge to dispute, respondent's assertion that the IRS sent preliminary notices by regular first class mail in March and April 2007.  Petitioner simply states that he did not receive

the notices and was consequently surprised when he received by registered mail the notice of deficiency dated July 31, 2007, determining an income tax deficiency of $1,575 for 2005.

The Court generally "will not look behind a deficiency notice to examine the evidence used or the propriety of * * * [the Commissioner's] motives or of the administrative policy or procedure involved in making his determinations." Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974) (declining to investigate the Commissioner's alleged failures to issue a 30-day letter and to offer the taxpayers a conference with Appeals before issuing the notice of deficiency). The underlying rationale for this principle is that the Court conducts its proceedings de novo, deciding a taxpayer's tax liability on the merits of the case and not on any previous record the Commissioner has developed at the administrative level. Id.

As long as the notice of deficiency reveals on its face that the Commissioner has made a determination for a particular year, in a particular amount, and after reviewing information specific to the particular taxpayer, then barring unusual facts or circumstances not present here, the notice of deficiency is valid. Campbell v. Commissioner, 90 T.C. 110, 112, 115 (1988); Montgomery v. Commissioner, 65 T.C. 511, 522 (1975); Whittington v. Commissioner, T.C. Memo. 1999-279. Preliminary notices and administrative meetings may be courteous and may allow taxpayers

to resolve early misconceptions by the Commissioner, but section 6212(a) (setting forth the requirements for issuing a notice of deficiency) or any other section does not require them.

In petitioner's case, the 10-page notice of deficiency indicates clearly that respondent made a determination for a particular year, 2005, in a particular amount, $1,575, after examining the particular items of petitioner's 2005 Federal income tax return. Accordingly, we find that respondent's notice of deficiency is valid.

B. Detrimental Reliance

Petitioner's second complaint against respondent's procedures begins with a September 18, 2007, telephone conversation that Mr. Ekanem and petitioner had with Richard Theodore, the IRS representative whose name the notice of deficiency, dated July 31, 2007, lists as the proper person to contact at the IRS. According to petitioner, during the telephone conversation, Mr. Theodore told Mr. Ekanem and petitioner that the IRS was "all set" with respect to the adjustments. Petitioner interpreted this comment as having convinced Mr. Theodore that the Commissioner's determination was in error and petitioner's 2005 return was correct as filed. The Court received into evidence a copy of the notice of deficiency with a note petitioner wrote on the front page asking Mr. Theodore to "please close this audit" per the September 18, 2007,

telephone conversation. Petitioner therefore felt misled when on October 23, 2007, he called Mr. Theodore and discovered that he still owed the $1,575. Petitioner then had to scramble to file his petition quickly before the 90-day period expired 6 days later, leaving petitioner wondering whether Mr. Theodore and the IRS had intentionally tried to trick him into missing the deadline for filing a petition with the Tax Court.

Respondent claims that after the notice of deficiency was issued, the Appeals Office sent several letters to petitioner, but petitioner did not respond. Petitioner counters that but for Mr. Theodore's false representation, petitioner would have had his accountant available to provide copies of his records to respondent. Instead, by the time petitioner called Mr. Ekanem for additional assistance, an individual in the office informed petitioner that Mr. Ekanem was unavailable because he was in Nigeria.[1] Petitioner had given all of his tax records to Mr. Ekanem during the tax preparation session in early 2006. Petitioner acknowledged that Mr. Ekanem returned the originals, but petitioner lost them.

Unfortunately for petitioner, even if Mr. Theodore made such a statement, the Commissioner is empowered to retroactively

---

[1]We take judicial notice that on Jan. 23, 2008, a Lexington, Mass., resident named Eddy Ekanem pleaded guilty to one count of embezzlement and four counts of larceny related to insurance fraud, receiving a sentence of 2-1/2 years in the House of Corrections.

correct mistakes of law, even where a taxpayer has relied to his detriment on the Commissioner's mistake. Dixon v. United States, 381 U.S. 68, 72-73 (1965); Montgomery v. Commissioner, supra at 522 (the recommendation of an IRS agent for a "no change" audit is not binding on the Commissioner for purposes of litigation); Hodel v. Commissioner, T.C. Memo. 1996-348 (an IRS agent does not have the authority to bind the Commissioner, even if the taxpayer has detrimentally relied on the erroneous advice of an agent).

III.  Respondent's Disallowances

A.  Deductions in General

Deductions are a matter of legislative grace, and taxpayers must satisfy the statutory requirements for claiming the deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Section 6001 requires taxpayers to maintain records sufficient to establish the amount of each deduction.  See also Ronnen v. Commissioner, 90 T.C. 74, 102 (1988); sec. 1.6001-1(a), (e), Income Tax Regs.  If a taxpayer can establish that he once possessed adequate records, but lost the records on account of circumstances beyond his control, such as a fire or flood or other casualty, then the Court will permit the taxpayer to reasonably reconstruct his expenses. Gizzi v. Commissioner, 65 T.C. 342, 345 (1975).

Taxpayers may deduct ordinary and necessary expenses that they pay in connection with operating a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). To be ordinary the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be necessary an expense must be appropriate and helpful to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113. Additionally, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Section 262(a) disallows deductions for personal, living, or family expenses.

If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930) (hereinafter the Cohan rule or simply Cohan). The taxpayer must present sufficient evidence for the Court to form an estimate, because without such a foundation, any allowance would amount to unguided largesse. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Congress enacted legislation negating the judicial doctrine of Cohan with regard to certain, but not all, expenses. Sec. 274(d); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Expenses associated with travel,

meals, and certain listed property defined in section 280F(d)(4), including passenger automobiles, computers, and cellular telephones, are all now subject to a heightened level of substantiation, requiring taxpayers to corroborate their statements with adequate records or sufficient other evidence establishing the amount, time, place, and business purpose of the expense. Sec. 274(d). Thus, for these categories of expenses, even if an estimate would otherwise be allowable under Cohan, the Code prohibits a deduction unless the taxpayer has sufficient substantiation. See sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

With respect to cost of goods sold, purchases are not deductible but are instead an offset to gross receipts in determining gross income. Metra Chem Corp. v. Commissioner, 88 T.C. 654 (1987); Nunn v. Commissioner, T.C. Memo. 2002-250; Wright v. Commissioner, T.C. Memo. 1993-27; sec. 1.61-3(a), Income Tax Regs. Thus, the Code does not treat cost of goods sold as a deduction from gross income, and it is not subject to the limitations on deductions in sections 162 and 274. See Metra Chem Corp. v. Commissioner, supra; B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. 422, 428 (1975), affd. per curiam 584 F.2d 53 (5th Cir. 1978); Nunn v. Commissioner, supra; secs. 1.61-3(a), 1.162-1(a), 1.471-3, Income Tax Regs. Nonetheless, taxpayers must substantiate the amount they report as cost of

goods sold, and they must maintain sufficient records for this purpose. Sec. 6001; Nunn v. Commissioner, supra; Wright v. Commissioner, supra; sec. 1.6001-1(a), Income Tax Regs.

Keeping in mind these well-established principles, we now apply the law to petitioner's specific facts to decide whether respondent's determinations are correct for 2005.

B. Schedule C--Translation and Interpretation Services

1. Cost of Goods Sold

Petitioner reported $2,004 in cost of goods sold, and respondent disallowed the entire amount. Petitioner is unsure what items Mr. Ekanem included in cost of goods sold. Petitioner testified that the items were probably goods "which would help me as an interpreter, maybe clothes, maybe some items which [were] helpful to me to go up there and interpret." Petitioner acknowledged that he bought suits for his interpreting assignments and that Mr. Ekanem probably included the costs of the suits in cost of goods sold. Petitioner stated that the suits he bought in 2005 for interpreting were different from suits he would wear for other purposes such as going out to a formal dinner, but he did not specify how the suits were different.

Taxpayers may deduct expenses for articles of clothing under section 162(a) only if the clothing is required in the taxpayer's employment, is not suitable for general or personal wear, and is

not worn for general or personal purposes. Yeomans v. Commissioner, 30 T.C. 757, 767-768 (1958). We find the suits petitioner purchased in 2005 to serve as an interpreter are suitable for general wear. Therefore, petitioner is not entitled to claim as a cost of goods sold or otherwise deduct amounts he paid for clothing in 2005 to serve as an interpreter. With respect to any other items petitioner included in cost of goods sold for 2005, petitioner unfortunately provided no information. We therefore sustain respondent's full disallowance of petitioner's cost of goods sold.

### 2. Car and Truck Expenses

Petitioner claimed $3,500 and respondent allowed $1,620 in deductions for car and truck expenses for 2005. Petitioner claimed he owned two automobiles in 2005: A large Chevrolet Suburban for personal use and for commuting to and from his job as a corrections officer, and a smaller, gas-efficient Dodge Neon he bought in 2005 for $4,800 that he used exclusively for driving to and from his interpreting assignments. Petitioner claims he maintained a contemporaneous log detailing the trips he made for interpreting and that he presented the log to Mr. Ekanem to calculate the proper deduction. But as noted, petitioner was unable to find the original log and Mr. Ekanem was unavailable at trial to produce a copy or to explain the deduction.

Petitioner did not establish that he lost the original on account of circumstances beyond his control. Even if this were the case, petitioner has not satisfied the second requirement of reasonably reconstructing or even attempting to reconstruct his expenses. See Gizzi v. Commissioner, 65 T.C. at 346.

Moreover, section 274(d) requires stringent substantiation requirements for certain expenses, including expenses related to passenger automobiles as listed property under section 280F(d)(4)(A)(i). Respondent already allowed a deduction for 2005 of $1,620, which was apparently an allowance of 4,000 business miles times the 2005 standard mileage rate of 40.5 cents per mile. See Rev. Proc. 2004-64, sec. 5.01, 2004-2 C.B. 898, 900 (setting the standard mileage rate for 2005 at 40.5 cents per mile). We also note that in Part V, Other Expenses, of Schedule C, Mr. Ekamen on petitioner's behalf separately deducted $1,400 as a gasoline expense, which respondent did not challenge. The standard mileage rate includes an allowance for gasoline, as well as for depreciation or lease payments, maintenance and repairs, tires, oil, insurance, and registration fees. Id. sec. 5.03, 2004-2 C.B. at 900. Consequently, petitioner has provided no evidence to support a larger deduction than the one or ones respondent has already allowed. We sustain respondent's partial disallowance of petitioner's car and truck expenses.

### 3. Insurance

Petitioner deducted $2,100 as an insurance expense for 2005, and respondent disallowed the entire amount. Petitioner estimated that of the $2,100, he paid about $500 or $600 for homeowner's insurance, and the remaining $1,500 to $1,600 was for automobile insurance on the Dodge Neon that he drove exclusively for his interpreting assignments. For the rest of this discussion, we will assume petitioner spent $500 on homeowner's insurance and the remaining $1,600 on automobile insurance for 2005.

### a. Automobile Insurance

As noted above, the standard mileage rate already includes an allowance for insurance. Rev. Proc. 2004-64, sec. 5.03. Moreover, passenger automobiles are included as listed property under section 280F(d)(4)(A)(i), and related expenses are therefore subject to the stringent substantiation requirements of section 274(d). Petitioner provided no records, no canceled checks from his bank, and not even copies of bills or policy statements from his insurance company to substantiate that he paid $1,600 in automobile insurance in 2005 or that the payment was solely for the Dodge Neon. Petitioner also did not present a reconstructed record to replace his lost log establishing his 2005 business use percentage for the Dodge Neon.

For all of these reasons, we sustain respondent's full disallowance of petitioner's automobile insurance expense.

### b. Homeowner's Insurance

Regarding the homeowner's insurance, taxpayers may deduct expenses related to a portion of their home that they use regularly and exclusively as the principal place of any trade or business. Sec. 280A(c); Tobin v. Commissioner, T.C. Memo. 1999-328. The record contains no indication that Words provided petitioner with office space. Even if Words did provide space, we doubt petitioner could have conveniently accessed his messages and conducted his business there. Petitioner's uncontroverted testimony is that he dedicated part of his home regularly and exclusively to coordinating his interpreting activities. Petitioner estimated the space as 300 or 400 square feet of his 2,400-square-foot home. In this space petitioner maintained a computer, a desk, a fax machine, and a printer to receive telephone calls and faxes from hospitals, immigration offices, and courts. Petitioner checked his messages regularly before and after his job as a corrections officer.

Respondent did not challenge this aspect of petitioner's testimony. We find petitioner's testimony regarding the business use of his home credible. However, petitioner's estimate of a 300- or 400-square-foot area seems excessive for such a limited activity (only 37.5 paid hours for all of 2005). Therefore,

without additional information, applying <u>Cohan</u>, and bearing heavily against petitioner, we find it likely that petitioner dedicated no more than a small area, perhaps 100 square feet out of the 2,400-square-foot home, or 4.17 percent, for business use.

Ordinarily, at this juncture we would find that petitioner is entitled to a $21 ($500 x 4.17 percent) deduction on Schedule C for a homeowner's insurance expense for 2005.  However, section 280A(c)(5) provides two additional considerations.  First, section 280A(c)(5) limits a taxpayer's deductions for business use of a home to the amount by which the activity's gross income from the taxpayer's business use of the residence exceeds the sum of deductions which are allowable regardless of whether the taxpayer used the residence for business, such as mortgage interest and property taxes, plus deductions for expenses of the business which are not allocable to the business use of the residence.  See <u>Tobin v. Commissioner</u>, <u>supra</u>.  In other words, a taxpayer may not claim a deduction that would give rise to, or increase a net loss from, the business to which the deduction relates.  <u>Visin v. Commissioner</u>, T.C. Memo. 2003-246. Additionally, section 280A(c)(5) provides that the taxpayer may carry forward any resulting disallowed deductions to the next year.  See sec. 280A(c)(5) (flush language).  On Schedule C for 2005, petitioner reported a loss of $10,754 before respondent's adjustments.  Accordingly, the amount of the $21 eligible

homeowner's insurance expense that petitioner may deduct in 2005 or must carry forward to 2006 will be computed under Rule 155.

C. Itemized Deductions

1. Charitable Contributions

Petitioner deducted $3,175 in charitable contributions on Schedule A, Itemized Deductions, for 2005.  Respondent disallowed the entire amount as not being made to a qualifying organization. Petitioner acknowledges that part of the $3,175 total includes donations he sent to Ethiopia to help charitable causes there, and he concedes that these overseas organizations are not qualified section 501(c)(3) charities within the meaning of section 170(c).  However, petitioner also claims that he belongs to, attended, and tithed his income to the Ethiopian Orthodox Church in the United States, not the Ethiopian Methodist Church which Mr. Ekamen mistakenly keyed onto Schedule A.

Petitioner states that he attended an Ethiopian Orthodox Church about once a month in the Washington, D.C., area where most of his family resides and that he also attended an Ethiopian Orthodox Church in Boston when his schedule permitted. Petitioner claims he donated clothes to families in need in the Boston area and that he put about $100 cash in the church's box each time he attended a church in Washington or Boston. Petitioner acknowledges he did not ask for receipts, but he has

offered to provide respondent with the telephone number and contact information for the church in Washington, D.C.

Taxpayers may generally deduct a charitable contribution only if they substantiate the deduction in a manner verifiable according to "regulations prescribed by the Secretary." Sec. 170(a)(1). For each charitable contribution of money less than $250 made before 2006 the pertinent regulation requires that the taxpayer substantiate the contribution with a canceled check, a receipt, or other reliable evidence showing the name of the donee, the date of the contribution, and the amount of the contribution. Alami El Moujahid v. Commissioner, T.C. Memo. 2009-42; sec. 1.170A-13(a)(1), Income Tax Regs. Contributions of cash or property of over $250 require the donor to obtain the donee's contemporaneous written acknowledgment of the donation. Sec. 170(f)(8); Alami El Moujahid v. Commissioner, supra.

The Court has not decided definitively whether Cohan is available to estimate charitable contributions. See Kendrix v. Commissioner, T.C. Memo. 2006-9 (finding that the Court has not yet squarely addressed the inherent conflict between section 170(a)(1) and the application of Cohan to unverified or inadequately substantiated charitable contributions). However, precedents exist to allow a Cohan estimate for charitable contributions, especially where we find the taxpayer was candid, forthright, and credible. Stockwell v. Commissioner, T.C. Memo.

2007-149 (stating unconditionally that "We may estimate cash charitable contributions under the Cohan rule"); Hooks v. Commissioner, T.C. Memo. 1993-437; Wren v. Commissioner, T.C. Memo. 1984-456.

Petitioner provided no substantiation of his charitable contributions. However, respondent's blanket disallowance goes too far. Petitioner is an industrious individual working two jobs while attending school. His religious commitment appears genuine. In summary for charitable contributions, using our best judgment on the entire record before us, and under Cohan bearing heavily against petitioner's own inexactitude, we find it credible that at least once a month throughout 2005 petitioner attended and made a cash contribution of at least $25 to a qualified Ethiopian Orthodox Church in Washington, D.C., or in Boston. Accordingly, petitioner is entitled to an itemized deduction of $300 for charitable contributions in 2005.

### 2. Gambling Losses

Petitioner deducted $5,032 in gambling losses as an itemized deduction, and respondent limited the deduction to $3,180, the amount of petitioner's reported gambling winnings. Losses from wagering transactions are limited to the gains from the transactions. Sec. 165(d); Merkin v. Commissioner, T.C. Memo. 2008-146; sec. 1.165-10, Income Tax Regs. Petitioner has provided no justification to disregard this rule, and we find

none.  Therefore, we sustain respondent's partial disallowance of petitioner's gambling losses.

To reflect our disposition of the issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.